UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MOORE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHECKPOINT THERAPEUTICS, INC., JAMES F. OLIVIERO, and GARRETT GRAY, <br><br> Defendants. | Case No.  1:24-cv-02613-PAE [rel. 1:24-cv-03471-PAE] |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF INDKAY
ASSET, LIMITED PARTNERSHIP FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING
MOTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

    I.      THE COURT SHOULD APPOINT INDKAY AS LEAD PLAINTIFF ............... 4

          A.     IndKay Has the Largest Financial Interest of Any Competing Movant ..... 5

          B.     IndKay Satisfies the Applicable Requirements of Rule 23 ........................ 6

    II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
          APPROVED .......................................................................................................... 8

    III.    THE COMPETING MOTIONS SHOULD BE DENIED ..................................... 8

          A.     IndKay Has the Largest Financial Interest of Any Competing Movant ..... 8

          B.     Errors in Bailey's motion papers render him inadequate under Rule
              23 ............................................................................................................... 9

CONCLUSION ......................................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ..............................................5, 6, 7

*Camp v. Qualcomm Inc.*,
  No. 18-CV-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ..........................3, 9

*Chahal v. Credit Suisse Grp. AG*,
  18-CV-2268 *et al.*, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ........................................1, 5

*Dookeran v. Xunlei Ltd.*,
  Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................3, 7

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................1, 2, 6

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .......................................................................................3, 5, 7

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19-CV-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)..................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)...................................................5

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ..................................................................................................8

*In re Orion Sec. Litig.*,
  No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...........................3, 6, 7

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  225 F.R.D. 421 (E.D. Pa. 2005)................................................................................................5

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
  No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007)................................3, 4, 9

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010) .......................................................................................3, 6, 7

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .........................................................................................5, 6, 7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ...................................................................................8

*Lako v. Loandepot, Inc.*,
   No. 821CV01449JLSJDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022)...........................9, 10

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...............................5

*Rodriguez v. DraftKings Inc.*,
   No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)......................3, 9, 12

*Takara Trust v. Molex, Inc.*,
   229 F.R.D. 577 (N.D. Ill. 2005).................................................................................5, 6

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .............................................................................9

*Turpel v. Canopy Growth Corp.*,
   No. 23 CIV. 4302 (PAE), 2023 WL 8276633 (S.D.N.Y. Nov. 30, 2023).................................1

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 23........................................................................................... *passim*

Lead Plaintiff Movant IndKay[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 20); and in opposition to the competing motions of: (i) Hamilton Bailey ("Bailey") (Dkt. No. 17); and (ii) Xiaoou Deng ("Deng") (Dkt. No. 24).

### PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Checkpoint securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the greatest financial interest in the outcome of the Action; and that satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is IndKay, which incurred a loss of approximately $498,123 in connection with its Class Period transactions in Checkpoint securities. *See* Dkt. No. 23-1. Moreover, calculated consistently with the loss-causation principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and its progeny, IndKay incurred a recoverable loss of approximately $653,590 in connection with its Class Period purchases of Checkpoint securities.[2] *See* Dkt. No. 23-1. Although the PSLRA does not define "financial interest," courts in the Second Circuit, including this District, recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018) (equating

---

[1] All capitalized terms herein are defined in IndKay's moving brief, unless otherwise indicated. *See* Dkt. No. 22.

[2] As noted in its moving brief (*see* Dkt. No. 22 at 2 n.1), IndKay has calculated its *Dura* losses in accordance with the methodology articulated by this Court in its recent decision *Turpel v. Canopy Growth Corp.*, No. 23 CIV. 4302 (PAE), 2023 WL 8276633, at *4-9 (S.D.N.Y. Nov. 30, 2023).

financial interest with economic loss).  The table below sets forth the respective losses of the competing movants:

| Movant | Loss | *Dura* Loss[3] |
|--------|------|------------|
| IndKay | $498,123 | $653,590 |
| Deng | $69,090 | $63,237 |
| ~~Bailey~~ | ~~$448,164[4]~~ | ~~$510,136~~ |

As the above table reflects, IndKay's loss ($498,123) is ***more than seven times larger*** than that claimed by Deng ($69,090), the only other eligible competing movant.  Moreover, IndKay's recoverable loss ($653,590), calculated consistently with the loss-causation principles articulated in *Dura* and its progeny, is ***more than ten times larger*** than Deng's recoverable *Dura* loss ($63,237).  While another competing movant, Bailey, claims to have incurred the second-largest loss after IndKay, as discussed in detail below, Bailey fails to satisfy Rule 23's adequacy requirement, which mandates denial of his motion, irrespective of his claimed financial interests in this litigation.  As such, IndKay clearly possesses the largest financial interest in this Action within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff.

In addition to its significant financial interest in this Action, IndKay also strongly satisfies Rule 23's typicality and adequacy requirements.  IndKay's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.

---

[3] Although Deng and Bailey did not provide a loss estimate calculated consistent with *Dura* loss-causation principles, for comparative purposes, IndKay's counsel have calculated Deng and Bailey's approximate *Dura* losses pursuant to the same methodology that IndKay used to calculate its own *Dura* losses.

[4] As discussed further below, Bailey claims in his moving papers to have suffered a loss of approximately $448,164.  *See* Dkt. No. 18 at 5; Dkt. No. 19-3 at *3.  However, as discussed in greater detail *infra* at Section III.B, Bailey's actual losses potentially only amount to $303,510.

*See In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010). In addition, IndKay's significant loss gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, it is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, it has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018). Further demonstrating its adequacy, IndKay has submitted a detailed Declaration providing the Court with biographical information about itself and attesting to, *inter alia*, its understanding of the significance of its motion, its understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and its readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 23-3 ¶¶ 1-8, 10-12.

In stark contrast, Bailey, who claims to have suffered the second-largest loss after IndKay, is inadequate for multiple reasons and thus ineligible for appointment as Lead Plaintiff, irrespective of his financial interests in this litigation.

Bailey is inadequate under Rule 23 because certain of his papers are either false or else contain glaring errors. Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions. *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021); *Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007). First, Bailey's

3

Certification, in which he swore under penalty of perjury that he accurately listed "[m]y transactions in Checkpoint Therapeutics, Inc. securities during the Class Period" (Dkt No. 19-2 at *2 ¶ 4), lists certain sales of Checkpoint common stock from "Account 1" on January 17, 2023, February 6, 2023, March 3, 2023, and April 3, 2023 (*see id.* at *3-4) that are accounted for as *purchases* in his Financial Interest Analysis exhibit.  *See* Dkt. No. 19-3 at *2-3.  If these transactions are in fact sales and *not* purchases, as indicated in Bailey's sworn Certification, then his claimed loss of approximately $448,164 (*see* Dkt. No. 18 at 5; Dkt. No. 19-3 at *3) actually only amounts to approximately $303,510, and was artificially inflated by ***nearly $150,000***, or ***47.66%***.  On the other hand, if these transactions are in fact purchases and *not* sales, as indicated in Bailey's Financial Interest Analysis exhibit, then Bailey's sworn Certification falsely lists these transactions as sales.  Second, regardless of whether the foregoing transactions were purchases or sales, Bailey's sworn Certification indicates that he sold Checkpoint common stock at prices outside their daily trading ranges on May 31, 2023, rendering his Certification facially false in any event.  *See* Dkt. No. 19-2 at *5.  Each of these errors alone is sufficient to call into question the integrity of Bailey's entire submission to the Court and, taken together, they plainly disqualify him from serving as a fiduciary and representative on behalf of the Class.

For the reasons set forth herein, IndKay respectfully submits that the Court should grant IndKay's motion in its entirety and deny the competing motions.

**ARGUMENT**

### I.    THE COURT SHOULD APPOINT INDKAY AS LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy

4

within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate class representative is IndKay.

### A.   IndKay Has the Largest Financial Interest of Any Competing Movant

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit and around the country recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g.*, *Foley*, 272 F.R.D. at 128 (equating financial interest with economic loss); *Chahal*, 2018 WL 3093965, at *4 (same); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) (same); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding the amount of the financial loss "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, IndKay has a larger financial interest in this Action than Deng, the only eligible competing movant seeking appointment as lead plaintiff in this Action.  As the chart at p. 2 reflects, IndKay incurred a loss of approximately $498,123 as a result of the fraud

alleged in this Action.  *See* Dkt. No. 23-1.  These losses are ***more than seven times larger*** than Deng's claimed $69,090 loss.  Moreover, IndKay's recoverable loss of $653,590 (*see id.*), calculated consistently with the loss-causation principles articulated in *Dura* and its progeny, is ***more than ten times larger*** than Deng's $63,237 recoverable *Dura* loss.

While another competing movant, Bailey, claims the second-largest loss in this Action after IndKay, Bailey is inadequate under Rule 23 because certain of his papers are either false or else contain glaring errors, and is thus ineligible for appointment as lead plaintiff in the Action, as discussed in further detail in Section III.B., *infra*.

**B.    IndKay Satisfies the Applicable Requirements of Rule 23**

In addition to possessing the greatest financial interest in the outcome of this litigation—and thus being the statutorily presumed "most adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—IndKay has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23.  *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

First, IndKay's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. IndKay, like other Class members, purchased Checkpoint securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Checkpoint's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the

typicality requirement of Rule 23.  *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

Second, IndKay satisfies the adequacy requirement of Rule 23(a)(4) because its significant financial interest gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, IndKay is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, IndKay has selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.  *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2-3.  IndKay has further demonstrated its adequacy by submitting with its motion papers a detailed Declaration that provides information about itself, including where it is based, its purpose, and under what laws it is organized, and that attests to, *inter alia*, its understanding of the significance of its motion, its understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and its readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 23-3 ¶¶ 1-8, 10-12.

Accordingly, for all the foregoing reasons, IndKay has plainly made a *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23.  *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.

* * * *

Because IndKay has the largest financial interest in the relief sought by the Class and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA.  To overcome the strong presumption entitling IndKay to appointment as Lead Plaintiff, the PSLRA requires *"**proof**"* that IndKay is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this

case and any arguments to the contrary should be flatly rejected.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, IndKay has selected and retained Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 23-4.  Thus, the Court may be assured that by approving IndKay's selection of counsel, the members of the Class will receive the best legal representation available.

## III.    THE COMPETING MOTIONS SHOULD BE DENIED

### A.    IndKay Has the Largest Financial Interest of Any Competing Movant

As discussed further in Section I.A., *supra*, no competing movant has alleged a larger financial interest in this litigation than IndKay.  Accordingly, it is self-evident that no other movant can satisfy the PSLRA's first criterion for appointment as Lead Plaintiff.  This fact alone mandates denial of the competing motions.

**B.      Errors in Bailey's motion papers render him inadequate under Rule 23**

Bailey is inadequate under Rule 23 because his motion papers include multiple significant errors and/or falsities. *See, e.g.*, *Rodriguez*, 2021 WL 5282006, at *6, *9 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *Camp*, 2019 WL 277360, at *3-4 (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Vonage*, 2007 WL 2683636, at *7-8 n.8 (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-CV-02394, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Lako v. Loandepot, Inc.*, No. 821CV01449JLSJDE, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022) (expressing "serious concerns about the typicality of [a group]'s members and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses").

First, the schedule of transactions appended to Bailey's Certification (the "Transaction Schedule") (Dkt. No. 19-2 at *3-5)—which Bailey attested to being an accurate record of his Class

Period transactions in Checkpoint securities, under penalty of perjury (*see id.* at *2 ¶ 4)—lists certain sales of Checkpoint common stock that are accounted for as *purchases* in his Financial Interest Analysis exhibit (*see* Dkt. No. 19-3 at *2-3). Specifically, Bailey's Transaction Schedule lists the following transactions from an "Account 1", wherein he purportedly "Sold" shares of Checkpoint common stock on January 17, 2023, February 6, 2023, March 3, 2023, and April 3, 2023:

| Account 1 Common Stock | | | |
|---|---|---|---|
| **Date** | **Transaction Type** | **Quantity** | **Unit Price** |
| 1/17/2023 | Sold | -4 | $6.7500 |
| 1/17/2023 | Sold | -98 | $6.8100 |
| 1/17/2023 | Sold | -534 | $6.8100 |
| 1/17/2023 | Sold | -6,914 | $6.7700 |
| 2/6/2023 | Sold | -1 | $5.1900 |
| 2/6/2023 | Sold | -120 | $5.2000 |
| 2/6/2023 | Sold | -300 | $5.1500 |
| 2/6/2023 | Sold | -300 | $5.1600 |
| 2/6/2023 | Sold | -1,015 | $5.1500 |
| 2/6/2023 | Sold | -1,200 | $5.1500 |
| 2/6/2023 | Sold | -1,700 | $5.1600 |
| 2/6/2023 | Sold | -2,614 | $5.1800 |
| 3/3/2023 | Sold | -3,500 | $5.1000 |
| 4/3/2023 | Sold | -5 | $2.5100 |
| 4/3/2023 | Sold | -1,395 | $2.5000 |

| 4/3/2023 | Sold | -3,600 | $2.4900 |

Dkt. No. 19-2 at *3-4. However, these same transactions are accounted for and treated as *purchases* in Baily's Financial Interest Analysis exhibit in calculating his claimed loss of approximately $448,164. *See* Dkt. No. 19-3 at *2-3. Accordingly, one of two scenarios must be true. Either: (i) Baily erroneously accounted for these transactions as purchases rather than sales in his Financial Interest Analysis exhibit and his claimed loss of approximately $448,164 (*see* Dkt. No. 18 at 5; Dkt. No. 19-3 at *3) actually only amounts to approximately $303,510, and was thus artificially inflated by **nearly $150,000**, or **47.66%**; or (ii) these same transactions are erroneously listed as sales in the Transaction Schedule appended to Bailey's sworn Certification. Neither scenario bodes well for Bailey's readiness to serve as a class representative in a complex securities class action.

Second, the Transaction Schedule appended to Bailey's Certification is facially false, regardless of the errors discussed above, because it attests to multiple transactions in Checkpoint common stock at prices *outside* of the ranges at which Checkpoint stock traded on the dates in question. The chart below sets forth Bailey's out-of-range trades:

| Account 3 Common Stock | | | | |
|---|---|---|---|---|
| | | | Trading Range[5] | |
| Date | Shares Sold | Reported Price | Daily Low[6] | Daily High |
| 5/31/2023 | 20 | $2.5345 | $2.58 | $2.72 |
| 5/31/2023 | 470 | $2.5341 | $2.58 | $2.72 |
| 5/31/2023 | 510 | $2.5341 | $2.58 | $2.72 |
| 5/31/2023 | 600 | $2.5341 | $2.58 | $2.72 |
| 5/31/2023 | 1,600 | $2.5341 | $2.58 | $2.72 |

---

[5] Market data derived from Bloomberg Finance L.P. (last accessed on June 18, 2024).

[6] Daily low and daily high trading range includes pre- and post-market prices on May 31, 2023.

11

Dkt. No. 19-2 at *5.  As the above chart illustrates, Bailey has attested under penalty of perjury to five transactions in Checkpoint common stock at prices outside of the trading range on May 31, 2023.  These evident inaccuracies render Bailey's Certification facially false.

IndKay respectfully urges the Court not to treat the foregoing issues as minor or clerical errors.  This litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and supervise the efforts of counsel.  The fact that, at the earliest stage of this litigation, Bailey's motion papers are already riddled with material errors—including inconsistencies in his exhibits, a false Certification, incorrect trade prices, and potentially miscalculated losses—should not give the Court confidence that Bailey is prepared to serve as a fiduciary to the Class in this litigation.  *See Rodriguez*, 2021 WL 5282006, at *6, *9 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place").

**CONCLUSION**

For the foregoing reasons, IndKay respectfully requests that the Court issue an Order: (1) appointing IndKay as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  June 18, 2024

Respectfully submitted,

POMERANTZ LLP

/s/ Jeremy A. Lieberman
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor

12

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for IndKay Asset, Limited
Partnership and Proposed Lead Counsel for
the Class*

13