**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CHECKPOINT THERAPEUTICS, INC. SECURITIES LITIGATION | Case No. 1:24-cv-02613-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE</u>**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND...................................................................................................................... 3

      A.     Checkpoint's Development of Cosibelimab. ........................................................... 3

      B.     The FDA's Inspection of Samsung Biologics for the Cosibelimab BLA.............. 4

      C.     Checkpoint's Disclosure of the FDA's Form 483 and the FDA's Complete
             Response Letter for the Cosibelimab BLA. ........................................................... 5

      D.     The AC's Allegations and Claims. ........................................................................ 6

LEGAL STANDARD ............................................................................................................... 8

ARGUMENT ......................................................................................................................... 9

I.      The AC Fails to Plead a Section 10(b) Claim. ................................................................... 9

      A.     The AC Does Not Plausibly Allege a Strong Inference of Scienter. ..................... 9

             1.     The AC Does Not Allege Facts Sufficient to Infer Defendants'
                    Knowledge Regarding the FDA's Inspections of Samsung
                    Biologics. ................................................................................................. 9

             2.     The AC Fails to Plausibly Plead a Motive to Defraud............................. 13

             3.     The AC Fails to Plead Scienter as to the Individual Defendant. .............. 15

      B.     The AC Fails to Plausibly Allege Falsity. ........................................................... 17

             1.     The AC Does Not Plausibly Plead That Defendants Had Knowledge
                    of Any Allegedly Omitted Fact................................................................ 17

              2.     Half of the Alleged Misstatements Are Inactionable Puffery.................. 19

      C.     The AC Fails to Plead Loss Causation. ............................................................... 20

II.     The Section 20(a) Claim Must Be Dismissed Because the AC Fails to Allege a
      Section 10(b) Claim. ........................................................................................................ 22

III.    The Expert Declaration Attached to the AC Should Be Struck Because It Is Not a
      "Written Instrument" under Federal Rule of Civil Procedure 10(c)................................ 22

CONCLUSION..................................................................................................................... 23

<strong>TABLE OF AUTHORITIES</strong>

<strong>Page(s)</strong>

**CASES**

*Alix v. McKinsey & Co.*,
No. 18-cv-4141 (JMF), 2023 U.S. Dist. LEXIS 145872 (S.D.N.Y. Aug. 18, 2023)...............23

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
No. 1:17-cv-1235-GHW, 2018 U.S. Dist. LEXIS 54594 (S.D.N.Y. Mar. 30, 2018)..............22

*Ap-Fonden v. Gen. Elec. Co.*,
No. 17-CV-8457 (JMF), 2021 WL 311003 (S.D.N.Y. Jan. 29, 2021) ....................................10

*Aramic LLC v. Revance Therapeutics, Inc.*,
No. 21-cv-09585-AMO, 2024 U.S. Dist. LEXIS 58996 (N.D. Cal. Mar. 30, 2024)...............12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................8

*Bettis v. Aixtron SE*,
No. 16 Civ. 00025 (CM), 2016 U.S. Dist. LEXIS 180079 (S.D.N.Y. Dec. 20, 2016)............18

*Boluka Garment Co. v. Canaan Inc.*,
547 F. Supp. 3d 439 (S.D.N.Y. 2021)......................................................................................21

*Chew v. Moneygram Int'l, Inc.*,
No. 18-vb-7537, 2024 U.S. Dist. LEXIS 177223 (N.D. Ill. Sept. 30, 2024)...........................15

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)......................................................................................................14

*Condra v. PXRE Grp. Ltd.*,
357 F. App'x 393 (2d Cir. 2009) ................................................................................................9

*Cozzarelli v. Inspire Pharms., Inc.*,
549 F.3d 618 (4th Cir. 2008) ....................................................................................................14

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)......................................................................................................16

*Fisher v. Fennec Pharms, Inc.*,
No. 1:22-cv-115, 2022 U.S. Dist. LEXIS 186119 (M.D.N.C. Oct. 12, 2022).........................12

*Francisco v. Abengoa, S.A.*,
559 F. Supp. 3d 286 (S.D.N.Y. 2021).......................................................................................10

*Garnett v. RLX Tech. Inc.*,
  632 F. Supp. 3d 574 (S.D.N.Y. 2022)................................................................................18

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).......................................................................2, 13, 14

*Helo v. Sema4 Holdings Corp.*,
  No. 3:22-CV-01131 (VDO), 2024 U.S. Dist. LEXIS 135873 (D. Conn. July 31, 2024)........20

*Hill v. Bioxcel Therapeutics, Inc.*,
  No. 3:23-CV-00915 (SVN), 2024 U.S. Dist. LEXIS 121813 (D. Conn. July 11, 2024).........12

*Hoey v. Insmed, Inc*,
  No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907 (D.N.J. Feb. 15, 2018) ..........................15

*Honig v. Hansen*,
  Nos. 20 Civ. 5872, 20 Civ. 8618 (AKH), 2021 U.S. Dist. LEXIS 193097 (S.D.N.Y.
  Oct. 8, 2021) ......................................................................................................................21

*Hubiack v. Li-Cycle Holdings Corp.*,
  No. 23-cv-9894 (JSR), 2024 U.S. Dist. LEXIS 102481 (S.D.N.Y. June 10, 2024) ................17

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
  2023 U.S. Dist. LEXIS 48462 (S.D.N.Y. Mar. 22, 2023) ......................................................22

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)..................................................................................20

*In re Aratana Therapeutics Inc. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018)............................................................................ passim

*In re Avon Prods.*,
  2009 U.S. Dist. LEXIS 26507 (S.D.N.Y. Mar. 30, 2009) ......................................................17

*In re Avon Prods.*,
  2009 U.S. Dist. LEXIS 34564 (S.D.N.Y. Feb. 23, 2009)......................................................17

*In re Canopy Growth Sec. Litig.*,
  23 Civ. 4302 (PAE), 2024 U.S. Dist. LEXIS 127320 (S.D.N.Y. July 17, 2024) ....................23

*In re CRM Holdings, Ltd.*,
  No. 10 Civ. 975 (RPP), 2012 U.S. Dist. LEXIS 66034 (S.D.N.Y. May 10, 2012) .................16

*In re Diebold Nixdorf, Inc. Sec. Litig.*,
  19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449 (S.D.N.Y. Mar. 30, 2021)......................17

*In re Discovery Labs. Secs. Litig.*,
  No. 06-1820, 2007 U.S. Dist. LEXIS 18163 (E.D. Pa. Mar. 15, 2007)..................................19

*In re Ferroglobe PLC Secs. Litig.*,
  No. 1:19-cv-00629 (RA), 2020 U.S. Dist. LEXIS 210382 (S.D.N.Y. Nov. 10, 2020) ...........18

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014)...................................................................................17

*In re New Energy Sys. Sec. Litig.*,
  66 F. Supp. 3d 401 (S.D.N.Y. 2014)...................................................................................21

*In re Sierra Wireless, Inc. Sec. Litig.*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007)..................................................................................18

*In re XM Satellite Radio Holdings Sec. Litig.*,
  479 F. Supp. 2d 165 (D.D.C. 2007) ....................................................................................20

*In re Xunlei Ltd. Secs. Litig.*,
  No. 18 Civ. 467 (PAC), 2019 U.S. Dist. LEXIS 154010 (S.D.N.Y. Sept. 10, 2019)........11, 12

*Lau v. Opera Ltd.*,
  527 F. Supp. 3d 537 (S.D.N.Y. 2021)..............................................................................11, 12

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................................................20

*Li Hong Cheng v. Can. Goose Holdings, Inc.*,
  No. 19-CV-8204 (VSB), 2021 U.S. Dist. LEXIS 135023 (S.D.N.Y. July 19, 2021)..........2, 18

*Liu v. Intercept Pharms., Inc.*,
  No. 20-3488, 2022 U.S. App. LEXIS 16659 (2d Cir. June 16, 2022)...............................13, 15

*McClain v. Iradimed Corp.*,
  111 F. Supp. 3d 1293 (S.D. Fla. 2015) ...........................................................................13, 19

*Monroe County Employees' Retirement System v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014)...................................................................................22

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ...............................................................................................14

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................................23

*Rudman v. CHC Group LTD.*,
  217 F. Supp. 3d 718 (S.D.N.Y. 2016)..................................................................................20

*Sapir v. Verback*,
  No. 14-7331, 2016 U.S. Dist. LEXIS 15956 (D.N.J. Feb. 10, 2016) ...................................15

*Schaeffer v. Nabriva Therapeutics PLC*,
   No. 19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035 (S.D.N.Y. Apr. 28, 2020)..........12, 19

*Schaffer v. Horizon Pharma PLC*,
   No. 16-CV-1763 (JMF), 2018 U.S. Dist. LEXIS 8114 (S.D.N.Y. Jan. 18, 2018) .................20

*Shemian v. Research in Motion Ltd.*,
   No. 11 Civ. 4068 (RJS), 2013 U.S. Dist. LEXIS 49699 (S.D.N.Y. Mar. 29, 2013) ..............16

*Singh v. Deloitte LLP*,
   No. 21-cv-8458 (JGK), 2023 U.S. Dist. LEXIS 115252 (S.D.N.Y. July 5, 2023).................23

*Solow v. Citigroup, Inc.*,
   No. 10 Civ. 2927 (RWS), 2012 U.S. Dist. LEXIS 70022 (S.D.N.Y. May 18, 2012)........20, 21

*Stratte-McClure v. Morgan Stanley*,
   598 F. App'x 25 (2d Cir. 2015).....................................................................................21

*Trs. of the Welfare v. Medtronic PLC*,
   No. 22-cv-2197, 2024 U.S. Dist. LEXIS 55664 (D. Minn. Mar. 28, 2024) ...........................12

*Woolgar v. Kingstone Cos.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020)..............................................................................17

**RULES AND REGULATIONS**

17 CFR § 240.10b-5................................................................................................................8

Fed. R. Civ. P. 10(c) ............................................................................................................22

Fed. R. Civ. P. 12(b) .......................................................................................................8, 23

**STATUTES**

Prescription Drug User Fee Act, 21 U.S.C. § 379h *et seq.*.................................................. passim

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)..........................................8, 9, 14

Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b)........................................ passim

Section 20(a) of the Securities Exchange Act, 15 U.S.C. §78t(a) ....................................2, 3, 8, 22

iv

### CITATION CONVENTIONS

"AC":  Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws, filed August 23, 2024 (DCKT #36)

"BLA":  FDA Biologics License Application, which is a request for permission to introduce, or deliver for introduction, a biologic product into interstate commerce, 21 C.F.R. § 601.2

"Checkpoint":  Defendant Checkpoint Therapeutics, Inc.

"CRL":  FDA Complete Response Letter, which is sent by the FDA if the agency determines that it will not approve, among other things, a BLA in its present form, 21 C.F.R. § 314.110(a)

"Defendants":  Defendants Checkpoint Therapeutics, Inc. and James Oliviero

"EIR":  FDA Establishment Inspection Report

"Exchange Act":  The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq*.

"FDA":  United States Food and Drug Administration

"Individual Defendant":  Defendant James Oliviero, Checkpoint's Chief Executive Officer and a member of Checkpoint's Board of Directors

"Jaffe Declaration" or "Jaffe Decl.":  Declaration of Brett Jaffe in Support of Checkpoint's Motion to Dismiss and Motion to Strike, filed October 23, 2024

"Plaintiffs":  Lead Plaintiff Hamilton Bailey and named Plaintiff Reiko Juhst

"PSLRA":  Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4, *et seq*.

"Samsung Biologics":  Samsung Biologics Co., Ltd., which is the third-party company that Checkpoint hired to manufacture cosibelimab

"SEC":  United States Securities and Exchange Commission

"Section 10(b)":  Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)

"Section 20(a)":  Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)

## PRELIMINARY STATEMENT

Checkpoint is a biopharmaceutical company developing a new immunotherapy treatment for skin cancer called cosibelimab.  In December 2023, the FDA issued an initial decision denying the Biologics License Application ("BLA") for cosibelimab.  That initial denial was not based on any concerns regarding cosibelimab's clinical data, safety, or labeling.  Rather, the FDA's decision stemmed entirely from issues identified during an FDA inspection of Samsung Biologics— the third-party company Checkpoint hired to manufacture cosibelimab.  Checkpoint disclosed the FDA's initial decision to deny the cosibelimab BLA and, even earlier, Checkpoint disclosed that the FDA issued a notice of potential regulatory violations to Samsung Biologics after its inspection for the cosibelimab BLA (the FDA also publicly reported the notice on its website).  Since then, Checkpoint has worked with Samsung Biologics to address the issues from the FDA's inspection and resubmitted the BLA to the FDA.

All too predictably, however, Plaintiffs now seek to manufacture a securities fraud claim from those basic facts, which are hardly exceptional in the drug-development context.  The AC is a transparent attempt to plead fraud by hindsight and it fails to plead any of the essential scienter, falsity, or loss causation elements of a Section 10(b) claim.  It should, therefore, be dismissed.

***First***, the AC fails to plead scienter because it "lacks non-conclusory allegations to support the inference that defendants knowingly withheld or misrepresented information in their possession."  *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018); (*infra* Section I.A.)  The AC's core allegation is that Defendants "failed to disclose" information about eleven FDA inspections of Samsung Biologics.  (AC ¶¶ 104-149.)  Ten of those inspections, however, concerned unnamed drugs Samsung Biologics manufactured for its other clients, and the AC does not even attempt to allege Defendants had knowledge of those inspections or their results.  Even as to the one FDA inspection for the cosibelimab BLA, the AC "lacks any

concrete allegations whatsoever regarding defendants' knowledge" of the inspection. *Aratana*, 315 F. Supp. 3d at 765. Furthermore, to the extent the AC alleges that Defendants knowingly concealed information about the FDA's inspections of Samsung Biologics, "the scheme that the []AC imagines lacks a coherent rational objective" because "Defendants would have known that" it "would be revealed, in relatively short order, upon the FDA's rejection of the" cosibelimab BLA. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600-601 (S.D.N.Y. 2016). "Courts regularly refuse to infer scienter . . . when confronted with [such] illogical allegations." *Id.*

**_Second_**, the AC fails to plead falsity. (AC ¶¶ 104-149; *infra* Section I.B.) For many of the same reasons the AC fails to plead scienter, the AC's falsity allegations must fail because the AC "does not even allege that Defendants possessed or had access to" the purportedly omitted information at the time of the alleged misstatements. *Li Hong Cheng v. Can. Goose Holdings, Inc.*, No. 19-CV-8204 (VSB), 2021 U.S. Dist. LEXIS 135023, at *18 (S.D.N.Y. July 19, 2021). Additionally, many of the alleged misstatements are inactionable puffery.

**_Third_**, the AC fails to plead loss causation. (*Infra* Section I.C.) To plead loss causation, Plaintiffs must allege that there was a *corrective disclosure* of the fraud, or that Checkpoint's stock price reacted negatively to the *materialization of the risk* concealed by the Defendants' alleged misstatements. Here, the AC relies on Checkpoint's announcement of the FDA's initial decision to deny the cosibelimab BLA to plead loss causation. That announcement, however, revealed nothing new about the allegedly omitted FDA inspections of Samsung Biologics—so it is not a corrective disclosure—and Checkpoint warned investors that the FDA could reject the cosibelimab BLA—so it was not the materialization of a risk concealed by Defendants either.

**_Finally,_** because Plaintiffs have failed to plead a primary violation of the federal securities laws, Mr. Oliviero cannot be liable as a control person under Section 20(a). (*Infra* Section II.)

2

In all, the AC fails to plead a federal securities fraud claim. It should, therefore, be dismissed with prejudice.

## BACKGROUND

### A.    Checkpoint's Development of Cosibelimab.

Checkpoint's development of cosibelimab began in 2015, when it licensed the exclusive worldwide rights for cosibelimab from the renowned Dana-Farber Cancer Institute. (Jaffe Decl., Ex. 4 at 3.) Following a multi-year clinical trial to evaluate the safety and efficacy of cosibelimab as a potential treatment for skin cancer, Checkpoint submitted a BLA to the FDA in January 2023. (*Id.*) The FDA accepted the BLA for review and set a Prescription Drug User Fee Act ("PDUFA") goal date of January 3, 2024 for an initial decision approving or rejecting it. (AC ¶ 131.)

During the BLA review process, the FDA analyzes a variety of safety and efficacy data, and the FDA also inspects the facilities where the biologics drug will be commercially manufactured. Here, there is no allegation that the FDA expressed concerns about the safety or efficacy for cosibelimab. Nor is there any allegation Defendants made false or misleading statements about that data. Instead, this case focuses on the FDA's inspection of the third-party company Checkpoint hired to manufacture cosibelimab—Samsung Biologics.

By almost any metric, Samsung Biologics is one of the largest and most sophisticated biologics manufacturers in the world. It has the world's largest biologics manufacturing facility, and it also has, in total, the world's largest biologics production capacity. (*Samsung Biologics Unlocks Additional Capacity For Production At Its Newest Plant 4*, PR NEWSWIRE (Oct. 11, 2022), https://www.prnewswire.com/news-releases/samsung-biologics-unlocks-additional-capacity-for-production-at-its-newest-plant-4-301645660.html.) In fact, its manufacturing facilities account for nearly 30% of the world's total biologics manufacturing capacity. (*Id.*) Not surprisingly, therefore, nearly every major pharmaceutical company partners with Samsung Biologics,

3

including Pfizer, GlaxoSmithKline, AstraZeneca, Bristol-Myers Squibb, and Moderna.[1] In addition, since 2015, Samsung Biologics has helped its clients obtain over 200 global regulatory approvals for biologics, including more than 30 FDA approvals. (*Fact Sheet*, SAMSUNG BIOLOGICS, https://samsungbiologics.com/about/fact-sheet (last visited Oct. 23, 2024).)

**B.    The FDA's Inspection of Samsung Biologics for the Cosibelimab BLA.**

The FDA's inspection of Samsung Biologics for the cosibelimab BLA began on August 21, 2023 and concluded on September 1, 2023. (AC ¶ 84.) After the inspection, the FDA issued a Form 483 to Samsung Biologics listing the FDA's "inspection observations." (*Id.*; *id.*, Ex. 4.)

The issuance of a Form 483 is not unusual—more than 4,400 were issued in the 12 months before the FDA's inspection of Samsung Biologics for the cosibelimab BLA.[2] In addition, a Form 483 "does not constitute a final [FDA] determination of whether any condition is in violation of the [Federal Food, Drug and Cosmetic] Act or any of its relevant regulations." (*FDA Form 483 Frequently Asked Questions*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/inspections-

---

[1] Fraiser Kansteiner, *Moderna Taps Samsung For Fill-Finish Duties on "Hundreds of Millions" of COVID-19 Vaccine Doses* FIERCEPHARMA (May 24, 2021 11:40am) https://www.fierce pharma.com/manufacturing/moderna-taps-samsung-for-fill-finish-duties-hundreds-million-covid -19-vaccine-doses; *Pfizer Inks $183M Contract Manufacturing Deal with Samsung Biologics*, SAMSUNG BIOLOGICS (July 25, 2023), https://samsungbiologics.com/media/company-news/pfizer-inks-183m-contract-manufacturing-deal-with-samsung-biologics; Kevin Dunleavy, *GSK and Samsung Bio Double Down with 2nd Manufacturing Deal, This One for $296M*, FIERCEPHARMA (Oct. 21, 2022), https://www.fiercepharma.com/manufacturing/gsk-and-samsung-biologics-double-down-second-manufacturing-deal-one-296m; *Samsung Biologics and AstraZeneca Expand Strategic Manufacturing Partnership to Include COVID-19 and Cancer Therapy*, SAMSUNG BIOLOGICS (Apr. 17, 2024), https://samsungbiologics.com/media/company-news-view?boardSeq=1479; *Samsung Biologics Announces Expanded Strategic Agreement with Bristol Myers Squibb to Manufacture Antibody Cancer Drug Substance*, SAMSUNG BIOLOGICS (March 18, 2024), https://samsungbiologics.com/media/company-news/samsung-biologics-announces-expa nded-strategic-agreement-with-bristol-myers-squibb.

[2] *Inspection Observations*, U.S. FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/media/ 174101/download?attachment (last visited Oct. 23, 2024).

compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions (last visited Oct. 23, 2024).)

Moreover, the issuance of a Form 483 to Samsung Biologics did not require the FDA to also reject the cosibelimab BLA. The FDA's PDUFA date for an initial decision on the cosibelimab BLA was four months after the inspection, which left ample time for Samsung Biologics to respond to the Form 483 and implement a corrective action plan. To that end, after the FDA posted the Form 483 on its website in October 2023, a Samsung Biologics spokesman told the press that Samsung Biologics had already "developed and implemented a comprehensive plan to address the [Form 483 inspection] observations as quickly as possible."[3]

### C. Checkpoint's Disclosure of the FDA's Form 483 and the FDA's Complete Response Letter for the Cosibelimab BLA.

More than one month before the FDA's initial decision to deny the cosibelimab BLA, Checkpoint publicly disclosed that Samsung Biologics "received certain observations from the FDA on Form 483 related to a recent multi-sponsor on-site inspection" for the cosibelimab BLA. (Jaffe Decl., Ex. 12 at 47.) Checkpoint further stated that while it believed Samsung Biologics "will adequately respond to and address" the issues raised by the FDA, "there is no guarantee" that the FDA would not, nevertheless, deny the cosibelimab BLA or delay its approval:

> While we believe the manufacturer will adequately respond to and address the observations during our BLA review timeline, *there is no guarantee that the FDA will agree with the response and remediations in a timely manner or at all, which could negatively impact our ability to obtain regulatory approval for cosibelimab*.

(*Id*. (emphasis added).)

---

[3] (Fraiser Kansteiner, *Fast-Growing Samsung Biologics Chided by FDA Over Shortfalls at Plant in Korea*, FIERCEPHARMA (Oct. 20, 2023 10:03am), https://www.fiercepharma.com/pharma/samsung-biologics-chided-over-manufacturing-shortfalls-fda-form-483; Jaffe Decl., Ex. 13 at 3 (the FDA posted the Form 483 on its website on October 17, 2023).)

On December 18, 2023, Checkpoint further disclosed that the FDA issued a complete response letter ("CRL") stating it could not approve the cosibelimab BLA in its current form. (Checkpoint Therapeutics, Inc., Current Report (Form 8-K) at 1, Ex. 99.1 (Dec. 18, 2023).) As Checkpoint explained, "[t]he CRL only cites findings that arose during a multi-sponsor inspection of" Samsung Biologics "as approvability issues to address in a resubmission," and "[t]he CRL did not state any concerns about the clinical data package, safety, or labeling for the approvability of cosibelimab." (*Id.* at Ex. 99.1.)

After the CRL, Checkpoint continued working with Samsung Biologics to address the issues from the FDA's inspection, and in July 2024, Checkpoint announced that it resubmitted the cosibelimab BLA after "reaching alignment with the FDA on its BLA resubmission strategy to potentially address all approvability deficiencies outlined in the" CRL. (*Checkpoint Therapeutics Announces Biologics License Application Resubmission for Cosibelimab*, CHECKPOINT THERAPEUTICS, INC. (July 2, 2024 7:00am), https://ir.checkpointtx.com/news-events/press-releases/detail/119/checkpoint-therapeutics-announces-biologics-license.) The FDA accepted the cosibelimab BLA resubmission for review and set a PDUFA goal date of December 28, 2024 for a decision approving or rejecting the cosibelimab BLA resubmission. (Checkpoint Therapeutics, Inc., Current Report (Form 8-K) at 1, Ex. 99.1 (July 25, 2024).)

**D.    The AC's Allegations and Claims.**

The AC alleges that certain statements made by Defendants between March 9, 2021—more than *two years* before the FDA's inspection of Samsung Biologics for the cosibelimab BLA—and November 13, 2023 were false or misleading because Defendants "failed to disclose" information about eleven FDA inspections of Samsung Biologics. (AC ¶¶ 104-149.) Ten of the inspections concerned unnamed biologic drugs Samsung Biologics manufactured for its other clients. With respect to those inspections, the AC alleges Defendants "failed to disclose" that FDA

6

Form 483s were allegedly issued after the inspections, and the Form 483s noted, among other things, certain "data integrity problems." (AC ¶¶ 105–142.) The AC further alleges that those issues caused Samsung Biologics to notify unnamed clients about an "MSAT laboratory deficiency" and later "led to an internal investigation at Samsung Biologics and its firing of multiple executives." (*Id.*) Critically, there is no non-conclusory allegation in the AC that Defendants received or even knew about any of those Form 483s or related issues.

The eleventh inspection of Samsung Biologics referenced in the AC was for the cosibelimab BLA, and as to that inspection, the AC alleges Defendants "failed to disclose" certain information from the FDA's Form 483 and Establishment Inspection Report ("EIR") in statements made in September and November 2023. (*Id.* ¶¶ 143-149; *id.* Ex. 4 (Form 483); *id.* Ex. 5 (EIR).) The AC also alleges Defendants should have disclosed in November 2023 that "the FDA had already rejected Eli Lilly's lebrikizumab BLA" allegedly "due to the same issues noted in the Form 483" issued to Samsung Biologics for the cosibelimab BLA. (*Id.*) Notably, the AC does not allege that at the time of the alleged misstatements, Defendants had knowledge of the information they allegedly "failed to disclose" about the FDA's inspection of Samsung Biologics for the cosibelimab BLA.

Nevertheless, the AC alleges that because Defendants "failed to disclose" that information:

- Defendants' statements about the cosibelimab BLA were misleading because they omitted information "which created material risks to FDA approval" of the cosibelimab BLA;[4]

---

[4] (AC ¶¶ 105-108 (Mar. 9, 2021 press release); *id.* ¶¶ 115-118 (Jan. 25, 2022 conference); *id.* ¶¶ 121-124 (Aug. 12, 2022 press release); *id.* ¶¶ 125-128 (Jan. 18, 2023 conference); *id.* ¶¶ 129-133 (Mar. 30, 2023 press release); *id.* ¶¶ 136-138 (Sept. 11, 2023 conference); *id.* ¶¶ 139-142 (Sept. 28, 2023 conference); Jaffe Decl. Exs. 1, 3, 5-7, 9-10.) The full text of the documents containing the alleged misstatements are attached as Exhibits 1-12 of the Jaffe Declaration, and the Court may take judicial notice of those documents. *See Aratana*, 315 F. Supp. 3d at 743 n.1.

7

- Certain statements in Checkpoint's 2020, 2021, and 2022 Form 10-Ks were misleading because "compliance failures by Samsung Biologics were a presently existing fact, not merely a hypothetical possibility;"[5] and

- Defendants' disclosure of the FDA Form 483 issued to Samsung Biologics in connection with the cosibelimab BLA was misleading because it omitted information that was "essential to an accurate understanding of the significance of the Form 483, and severely undermined Defendants' purported belief that Samsung Biologics would adequately address the issues in the Form 483 within the cosibelimab BLA review timeline."[6]

Based on these allegations, the AC asserts Defendants violated Section 10(b) and SEC Rule 10b-5 thereunder, and the Individual Defendant is liable as a control person under Section 20(a).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted).

To state a claim under § 10(b) of the Exchange Act, a plaintiff must adequately plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Aratana*, 315 F. Supp. 3d at 753. In addition, the AC must satisfy "the pleading requirements of the Private Securities Litigation Reform Act ('PSLRA'), 15 U.S.C. § 78u-4(b)." *Id.* The PSLRA requires the AC to, among other things, "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)). In addition, the

---

[5] (AC ¶¶ 109-14 (2020 Form 10-K); *id.* ¶¶ 119-20 (2021 Form 10-K); *id.* ¶¶ 134-35 (2022 Form 10-K); Jaffe Decl., Exs. 2, 4, 8.)

[6] (AC ¶¶ 143-149 (November 13, 2023 press release and Form 10-Q); Jaffe Decl., Exs. 11-12.)

AC "must allege with particularity 'facts giving rise to a strong inference that the defendant acted with the required state of mind'—an intent to deceive, manipulate, or defraud." *Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393, 3934 (2d Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(2)). "For an inference of scienter to be strong, a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged, and the court must take into account plausible opposing inferences." *Aratana*, 315 F. Supp. 3d at 756 (quotations and citations omitted). Finally, the AC must plausibly allege "that the act or omission of the defendant alleged to violate" the Exchange Act "caused the loss for which the plaintiff seeks to recover damages," which is the loss causation element. 15 U.S.C. § 78u-4(b)(4).

## ARGUMENT

### I.    The AC Fails to Plead a Section 10(b) Claim.

#### A.    The AC Does Not Plausibly Allege a Strong Inference of Scienter.

##### 1.    *The AC Does Not Allege Facts Sufficient to Infer Defendants' Knowledge Regarding the FDA's Inspections of Samsung Biologics.*

The AC fails to plead a strong inference of scienter because it "lacks non-conclusory allegations to support the inference that defendants knowingly withheld or misrepresented information in their possession." *Aratana*, 315 F. Supp. 3d at 765. The AC alleges Defendants "failed to disclose" certain information about eleven FDA inspections of Samsung Biologics. The AC, however, "lacks any concrete allegations whatsoever regarding defendants' knowledge" of those inspections. *Id.*

Ten of the inspections concerned unnamed drugs (not cosibelimab) Samsung Biologics was manufacturing for its other clients (not Checkpoint). With respect to those inspections, the AC alleges Defendants "failed to disclose" that FDA Form 483s were allegedly issued after the inspections, and the Form 483s noted, among other things, certain "data integrity problems."

9

(AC ¶¶ 108, 114, 118, 120, 124, 128, 133, 135, 138, 142, 145, 149.)  The AC further alleges that those issues caused Samsung Biologics to notify unnamed clients about an "MSAT laboratory deficiency" and later "led to an internal investigation at Samsung Biologics and its firing of multiple executives."  (*Id.* ¶¶ 128, 133, 135, 138, 142, 145, 149.)

Critically, however, the AC does not allege—except in conclusory fashion—that Defendants had *any* knowledge of those inspections related to other drugs, let alone that they received the Form 483s the FDA allegedly issued to Samsung Biologics after those inspections.[7] Nor does the AC allege that Checkpoint was one of the unnamed "clients" that Samsung Biologics notified about the "MSAT laboratory deficiency" or that Defendants had knowledge regarding the "internal investigation at Samsung Biologics and its firing of multiple executives."

Even as to the one FDA inspection for the cosibelimab BLA, the AC lacks any particularized allegations regarding Defendants' non-public knowledge of the information they allegedly "failed to disclose."  The AC first claims Defendants "failed to disclose" certain information from the Form 483 and EIR  in statements made in September and November 2023. (AC ¶¶ 145, 149.)  The AC does not, however, allege that Defendants *ever* received the EIR. Moreover, as to the Form 483, the AC does not allege that Defendants received it prior to the alleged misstatements made in September 2023.  Further, since the FDA posted the Form 483 on

---

[7] To the extent the AC is attempting to plead scienter based on allegations of "industry standard practice," that effort fails.  (AC ¶¶ 53-69.)  Those allegations are based on an improper expert affidavit that should be struck (see *infra* Part III) and statements from a former Samsung Biologics employee who left Samsung Biologics more than three years before the alleged class period begins and who did not do "any work relating to Checkpoint during his time at Samsung Biologics."  (AC ¶ 69); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 319 (S.D.N.Y. 2021) (statements from a witness who had "no contact with a corporate officer are insufficient to support scienter"); *Ap-Fonden v. Gen. Elec. Co.*, No. 17-CV-8457 (JMF), 2021 WL 311003, at *8 (S.D.N.Y. Jan. 29, 2021) ("[W]here a complaint relies on information from a" witness "to establish scienter," it must "describe the nature of the [confidential source's] contact with the individual defendants that would be probative of defendants' mental state").

10

its website prior to the alleged misstatements in November 2023 (*see* Jaffe Decl., Ex. 13), "[i]t is not plausible, much less indicative of a strong inference of scienter, that" Defendants would fail to disclose information that was "publicly available" at the time of those alleged misstatements. *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 557-58 (S.D.N.Y. 2021); *In re Xunlei Ltd. Secs. Litig.*, No. 18 Civ. 467 (PAC), 2019 U.S. Dist. LEXIS 154010, at *32 (S.D.N.Y. Sept. 10, 2019) (defendants' alleged knowledge of a regulatory notice "cannot support an inference of scienter because it was publicly available").

The AC also asserts that Defendants' alleged misstatements in November 2023 "failed to disclose" that "the FDA had already rejected Eli Lilly's lebrikizumab BLA" allegedly "due to the same issues noted in the Form 483" issued to Samsung Biologics after the FDA's inspection for the cosibelimab BLA. (AC ¶¶ 143-149.)  Eli Lilly, however, publicly disclosed the CRL memorializing the rejection of the lebrikizumab BLA prior to Checkpoint's alleged misstatements. (*See* AC, Ex. 8 (Oct. 2, 2023 Eli Lilly press release announcing the CRL).)[8]  The AC even notes that the Eli Lilly CRL was "widely reported in industry publications," (*id.* ¶ 94), and  there are no allegations that Defendants had non-public knowledge about the FDA's CRL to Eli Lilly.  Thus, even crediting the AC's conclusory allegation that "Defendants knew about Eli Lilly's announcement,"[9] it does not support a strong inference of scienter to allege that Defendants "failed

---

[8] Eli Lilly announced the FDA recently approved that BLA.  (*See FDA Approves Lilly's EBGLYSS™ (lebrikizumab-lbkz) for Adults and Children 12 Years and Older with Moderate-to-Severe Atopic Dermatitis*, ELI LILLY (Sept. 13, 2024) https://investor.lilly.com/news-releases/news-release-details/fda-approves-lillys-ebglysstm-lebrikizumab-lbkz-adults-and.)

[9] The AC bases this claim on alleged similarities between Eli Lilly's and Checkpoint's press releases announcing their CRLs.  (AC ¶¶ 95-96.)  The AC speculates these purported similarities "could not have occurred by mere coincidence."  (*Id.* ¶ 96.)  This is sheer speculation, with no factual predicate at all.  The press releases are far from carbon copies of each other (AC, Ex. 8), and any similarities do not support the inference that Checkpoint copied Eli Lilly's press release.

11

to disclose" information that was already public.  *Lau*, 527 F. Supp. 3d at 557-58; *Xunlei*, 2019 U.S. Dist. LEXIS 154010, at *32.

Moreover, even if the AC plausibly alleged Defendants had contemporaneous access to the information they allegedly "failed to disclose" (and it does not), the AC's allegations would still fail to plausibly allege a strong inference of scienter.  As this Court has explained, "[i]n cases regarding public statements about FDA approval, a complaint will adequately plead scienter if it alleges the *management knows* that certain facts will *necessarily prevent the regulatory approval or the marketing of the drug* and conceals these facts from the investing public."  *Schaeffer v. Nabriva Therapeutics PLC*, No. 19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035, at *36 (S.D.N.Y. Apr. 28, 2020) (emphasis added).  Here, there are no allegations that Defendants knew the allegedly omitted information would "necessarily prevent" FDA approval of cosibelimab.  *Id.*

Moreover, Defendants' mere "awareness of the Form 483 does not demonstrate recklessness."  *Hill v. Bioxcel Therapeutics, Inc.*, No. 3:23-CV-00915 (SVN), 2024 U.S. Dist. LEXIS 121813, at *62 (D. Conn. July 11, 2024).  Instead, to plead scienter based on the receipt of a Form 483, the AC must "allege[] facts showing that *Defendants believed* that the *manufacturing issues could not be resolved quickly* or that the *FDA would not approve the BLA*."  *Aramic LLC v. Revance Therapeutics, Inc.*, No. 21-cv-09585-AMO, 2024 U.S. Dist. LEXIS 58996, at *42 (N.D. Cal. Mar. 30, 2024) (emphasis added).[10]  Here, there are no such allegations.  Instead, after

---

[10] *See also, e.g.*, *Trs. of the Welfare v. Medtronic PLC*, No. 22-cv-2197 (KMM/JFD), 2024 U.S. Dist. LEXIS 55664, at *80-81 (D. Minn. Mar. 28, 2024) (granting motion to dismiss based on a failure to plead scienter because "[t]here are no facts suggesting that Defendants knew or should have known that such an inspection was inevitably going to lead to the issuance of a Form 483, nor that the company's efforts to remediate those issues would be unsuccessful in holding off a warning letter that would ultimately delay approval of the MiniMed 780G.  In short, Plaintiffs' theory only brings the issue of scienter into focus when viewed through the lens of hindsight."); *Fisher v. Fennec Pharms, Inc.*, No. 1:22-cv-115, 2022 U.S. Dist. LEXIS 186119, at *17-18

12

receiving the Form 483, Checkpoint publicly disclosed only what it knew to be true, which is that the issues identified in the FDA's inspection of Samsung Biologics "***could negatively impact our ability to obtain regulatory approval for cosibelimab***."  (Checkpoint Therapeutics, Inc., Quarterly Report (Form 10-Q) at 47 (Nov. 13, 2023) (emphasis added).)  "It would have been premature for Defendants to disclose predictions about the FDA's response to the Form 483 issues."  *McClain v. Iradimed Corp.*, 111 F. Supp. 3d 1293, 1304 (S.D. Fla. 2015).

The AC further alleges that "it is highly likely" Defendants discussed FDA's Form 483 for the cosibelimab BLA with the FDA at the October 2023 late-cycle BLA meeting, and it "is further evidence of scienter" that Defendants made no public statements about that meeting.  (AC ¶¶ 163-166.)  This speculation, however, is not nearly enough to plead scienter.  *See Liu v. Intercept Pharms., Inc.*, No. 20-3488, 2022 U.S. App. LEXIS 16659, at *8-9 (2d Cir. June 16, 2022).

### 2. The AC Fails to Plausibly Plead a Motive to Defraud.

The AC also fails to plausibly "allege that defendants had a motive to defraud the public." *Gillis*, 197 F. Supp. 3d at 600.  The AC's core theory is that Defendants knew material facts about FDA inspections of Samsung Biologics and knowingly or recklessly "failed to disclose" that information to the market.  That theory, however, is nonsensical and, thus, implausible.

"[B]y its nature, [Defendants'] purported scheme could not have continued in perpetuity," and necessarily "would be revealed, in relatively short order, upon the FDA's rejection of the" cosibelimab BLA.  *Id*.  The AC offers no "coherent rational objective" Defendants could have sought to achieve in such a short-lived fraud that—according to the AC's own allegations—they

---

(M.D.N.C. Oct. 12, 2022) (granting motion to dismiss based on a failure to plead scienter because "[t]here are no allegations that the kinds of deficiencies listed in" the Form 483 "are the kind that always, or even almost always, lead to CRLs or non-approval, no allegations that anyone at the FDA told or intimated to Fennec that approval was unlikely; no allegations that anyone at [the CMO] told Fennec that the problems were of a kind likely to lead to a CRL; and no allegations that anyone at Fennec made statements tending to show they knew a CRL was forthcoming.")

knew would soon come to light. *Id.* "Courts regularly refuse to infer scienter . . . when confronted with [such] illogical allegations," especially where, as discussed below, the Individual Defendant did not make suspiciously timed stock trades. *Id.* at 601.

For example, in *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016), this Court dismissed a putative securities class action alleging that defendants knew their company's drug "would face a heightened proof hurdle" for FDA approval that they knew "it could not clear," but, nevertheless, intentionally "misrepresent[ed] to the public that approval was likely." *Id*. at 600. This Court held it was "implausible" that the defendants "harbored this state of mind." *Id.* Likewise, in *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020), the Ninth Circuit affirmed the dismissal of a putative securities class action alleging "defendants knew the FDA would not approve" a new drug, and questioned why defendants would "promise the market that the FDA would approve [the drug] if defendants knew the FDA would eventually figure out that [it] could not be approved due to 'intractable' and 'unresolvable' [] problems? ***The theory does not make a whole lot of sense***." *Id.* at 415 (emphasis added). As the Ninth Circuit explained, "the notion that a company would promise [regulatory] approval that it knew would not materialize does not, without more, create a strong inference of intent to deceive or deliberate recklessness." *Id*. That type of scienter "allegation does not resonate in common experience," and "the PSLRA neither allows nor requires" courts "to check [their] disbelief at the door." *Id*. The Third and Fourth Circuits have similarly rejected this type of misguided scienter theory in putative securities class actions about FDA regulatory approvals. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) (affirming the dismissal of a securities class action, finding that it was "improbable" defendants would have initiated a clinical drug trial "if they thought the drug was a complete failure," as plaintiff alleged); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 628 (4th

14

Cir. 2008) ("It is improbable that [the defendant] would stake its existence on a drug and a clinical trial that the company thought was doomed to failure. Plaintiffs' inference of fraud based on the supposed impossibility" of FDA approval "is thus not even plausible, much less convincing.").[11]

Just as in those cases, here, the AC's allegations fail to plausibly plead a motive for fraud.

### 3. The AC Fails to Plead Scienter as to the Individual Defendant.

Finally, the AC's scienter allegations about the Individual Defendant—Checkpoint's Chief Executive Officer ("CEO"), James Oliviero—are also not enough to plead scienter.

The AC alleges that the Individual Defendant must have known about the FDA's Form 483 for the cosibelimab BLA by late September 2023 because when he was asked by an analyst to "recap the kinds of discussions you've had with the FDA," he referred to Checkpoint's August 2023 mid-cycle meeting with the FDA and stated Checkpoint had a "very clean bill of health *as of that point in time* with the FDA." (AC ¶¶ 161-162.) According to the AC, "[i]f Oliviero was not aware of adverse developments post-dating the mid-cycle meeting, such as the September 1, 2023 Form 483, there would have been no reason for his caveat, 'as of that point in time.'" (*Id.* ¶ 162.) The AC's rank speculation about the CEO's off-the-cuff word choice when responding to an analyst is not sufficient to give rise to the requisite strong inference of scienter. *See Chew v. Moneygram Int'l, Inc.*, No. 18-vb-7537, 2024 U.S. Dist. LEXIS 177223, at *76-77 (N.D. Ill. Sept. 30, 2024) (finding that an executive's "statements off the cuff in response to an analyst question" were insufficient to plead scienter); *see also Liu*, 2022 U.S. App. LEXIS 16659, at *8-9 (holding that "speculative allegations fail to adequately allege scienter").

---

[11] *See also, e.g.*, *Hoey v. Insmed, Inc*, No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907, at *61 (D.N.J. Feb. 15, 2018) (rejecting alleged scienter theory that defendants deliberately misled the market regarding clinical trial results); *Sapir v. Verback*, No. 14-7331, 2016 U.S. Dist. LEXIS 15956, at *31 (D.N.J. Feb. 10, 2016) (dismissing claims that defendants "knew all along that" a clinical drug trial was unlikely to succeed because "when comparing the competing inferences, the opposing inference of non-fraudulent intent is more compelling than an inference of scienter").

The AC also asserts that scienter should be inferred because the Individual Defendant described himself as a "hands on" CEO and he made public statements about the cosibelimab BLA and Samsung Biologics. (AC ¶¶ 167-170.) These allegations amount to little more than a claim that scienter should be inferred because the Individual Defendant was Checkpoint's CEO. "[I]t is well established," however, "that accusations founded on nothing more than a defendant's corporate position are entitled to no weight" and "Plaintiff's position-based allegations . . . fail to support an inference of scienter." *Shemian v. Research in Motion Ltd.*, No. 11 Civ. 4068 (RJS), 2013 U.S. Dist. LEXIS 49699, at *48 (S.D.N.Y. Mar. 29, 2013).

Finally, the AC points to the Individual Defendant's incentive compensation and stock sales as a basis to infer scienter. (*See* AC ¶¶ 178-181.) Incentive compensation, however, does not give rise to a strong inference of scienter. After all, "[i]f scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009). Further, while the Individual Defendant sold stock during the alleged class period, Plaintiffs must do more than point to stock sales to plead scienter. "Plaintiffs must plead facts charging that there was something unusual or suspicious about the *timing* of the sale or sales," and the AC lacks any such allegations. *In re CRM Holdings, Ltd.*, No. 10 Civ. 975 (RPP), 2012 U.S. Dist. LEXIS 66034, at *68-69 (S.D.N.Y. May 10, 2012). Indeed, the Individual Defendant's stock sales occurred six months before Checkpoint submitted the cosibelimab BLA to the FDA and more than one year before the FDA's pre-approval inspection of Samsung Biologics and the FDA's CRL declining to approve the cosibelimab BLA. "Courts routinely hold that such an attenuated

16

gap between stock sales and corrective disclosures sap an inference of scienter." *Hubiack v. Li-Cycle Holdings Corp.*, No. 23-cv-9894 (JSR), 2024 U.S. Dist. LEXIS 102481, at *29 (S.D.N.Y. June 10, 2024); *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 235 (S.D.N.Y. 2020) ("Courts in the Second Circuit have found that stock sales are not indicative of scienter when they are more than two months before the announcement in question."). [12]

*    *    *

While rife with unfounded and speculative conclusions, the AC wholly fails to plausibly allege facts supporting a strong inference of scienter. This alone requires dismissal.[13]

**B.    The AC Fails to Plausibly Allege Falsity.**

*1.    The AC Does Not Plausibly Plead That Defendants Had Knowledge of Any Allegedly Omitted Fact.*

To plausibly allege falsity, the AC must plead facts demonstrating that each alleged misstatement "was false at the time it was made." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). Here, the AC claims the alleged misstatements were false or misleading because Defendants "failed to disclose" certain information about the FDA's inspections of Samsung Biologics and related issues. To plead falsity, therefore, the AC must allege Defendants had knowledge of those purportedly omitted facts at the time of the alleged misstatements.

---

[12] The Individual Defendant's transfer of stock to a trust for children is not relevant to scienter. (AC ¶¶ 175-177); *In re Avon Prods.*, 2009 U.S. Dist. LEXIS 34564, at *64 (S.D.N.Y. Feb. 23, 2009) (gift of shares to wife "inconsistent with plaintiffs' theory of fraudulent intent"), *report and recommendation adopted In re Avon Prods.*, 2009 U.S. Dist. LEXIS 26507 (S.D.N.Y. Mar. 30, 2009). The AC's further claim that it is "highly likely that the trust promptly sold most or all of such Checkpoint stock" is baseless speculation. (AC ¶¶ 175-177.)

[13] Although the AC's scienter allegations are evaluated "holistically," that "does not permit Plaintiff to combine inadequate allegations of motive with inadequate allegations of recklessness . . . to demonstrate scienter. That makes sense as a matter of elementary arithmetic. After all, zero plus zero (plus zero plus zero plus zero) cannot equal one." *In re Diebold Nixdorf, Inc. Sec. Litig.*, 19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449, at *42 (S.D.N.Y. Mar. 30, 2021).

17

As explained above, however, the AC entirely fails to plead that at the time of the alleged misstatements, Defendants had knowledge of the allegedly omitted information about the FDA's inspections of Samsung Biologics.[14]  That pleading deficiency is fatal to Plaintiffs' claims because falsity allegations based on omissions "must fail" when, as here, "Plaintiffs' Amended Complaint does not even allege that Defendants possessed or had access to" the allegedly omitted information at the time of the purported misstatements.  *Can. Goose Holdings*, 2021 U.S. Dist. LEXIS 135023, at \*18.[15]  For this reason alone, the AC fails to plausibly allege falsity.

In addition, although the Court need not reach this issue, the AC fails to plausibly allege that any of the purported misstatements were false or misleading.

To begin with, no court has held that there is a duty to disclose information about FDA inspections for drugs Defendants are not developing.  This Court should not be the first.

As to the FDA inspection of Samsung Biologics for the cosibelimab BLA, there is no factual basis from which to conclude that Defendants had a duty to disclose the Form 483 earlier or that their statements about the cosibelimab BLA were false or misleading.  "[T]he PDUFA date

---

[14] To the extent the AC attempts to plead falsity based on allegations that Defendants "failed to disclose" information that was already public, those allegations fail to plausibly allege falsity. *See, e.g.*, *Bettis v. Aixtron SE*, No. 16 Civ. 00025 (CM), 2016 U.S. Dist. LEXIS 180079, at \*34 (S.D.N.Y. Dec. 20, 2016) (granting motion to dismiss in putative securities class action because the information that plaintiff "claims was omitted was public information," and "[i]t has long been established that where information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose"); *accord Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 607-610 (S.D.N.Y. 2022).

[15] *See also, e.g.*, *In re Ferroglobe PLC Secs. Litig.*, No. 1:19-cv-00629 (RA), 2020 U.S. Dist. LEXIS 210382, at \*25 (S.D.N.Y. Nov. 10, 2020) (granting motion to dismiss in putative securities class action and holding that "the Complaint does not adequately plead falsity because Plaintiff fails to plausibly allege that Defendants were aware of facts that contradicted those statements at the time they were made"); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007) (granting motion to dismiss in putative securities class action and holding that "[i]n order for a statement to be false or misleading, a plaintiff must allege that the speaker was aware of adverse information at the time he spoke").

18

for" cosibelimab "was still over four months away" when the Form 483 was issued. *Schaeffer*, 2020 U.S. Dist. LEXIS 78035, at *32. Accordingly, "Plaintiff[s] need[] to plead something that suggests why these violations could not be remedied within that timeframe, rather than conclusory stating it was so." *Id.* Moreover, Defendants did disclose "that a Form 483 had been issued, and that it was a possibility that further action would be taken by the FDA. It would have been premature for Defendants to disclose predictions about the FDA's response to the Form 483 issues." *McClain*, 111 F. Supp. 3d at 1304. Although Defendants "may have attempted to put a positive spin" on the Form 483, "that is not, by itself, enough to form the basis for liability," and "[i]t is not the role of the courts to split hairs over *how* positively corporate executives are allowed to describe a negative event." *In re Discovery Labs. Secs. Litig.*, No. 06-1820, 2007 U.S. Dist. LEXIS 18163, at *13 (E.D. Pa. Mar. 15, 2007).

>   2.    *Half of the Alleged Misstatements Are Inactionable Puffery.*

Many of the AC's alleged misstatements are also inactionable puffery. Indeed, half of the alleged misstatements fall into this category because they described:

- A "transformative year" for Checkpoint (AC ¶ 107);

- Working to have the "best shot" at FDA approval (*id.* ¶ 117);

- Being "lucky" to be working with Samsung Biologics (*id.*);

- Making "substantial progress" towards finalizing the cosibelimab BLA (*id.* ¶ 123);

- Getting "FDA buy-in" (*id.* ¶ 127);

- The "wise decision" to involve the FDA in the pre-submission process (*id.*);

- Including "essentially what the FDA's expecting" in the cosibelimab BLA (*id.*);

- "[D]oing very well towards approval" of the cosibelimab BLA. (*Id.* ¶ 137).

19

These statements do "no more than place a 'positive spin' on developments in the [FDA approval] process." *Aratana*, 315 F. Supp. 3d at 757.[16]  Accordingly, they "are mere puffery, and hence non-actionable" under the federal securities laws.  *Id.*

C.      **The AC Fails to Plead Loss Causation.**

Finally, the AC cannot plead loss causation, which is a required element of a Section 10(b) claim.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

To plead loss causation, the AC must allege Defendants' purported misstatements "concealed something from the market that, *when disclosed*, negatively affected the value" of Checkpoint's stock.  *Id.* at 173 (emphasis added).  Loss causation can be shown either by alleging that the market reacted negatively to a "corrective disclosure," which revealed "that allegedly material information had been omitted," or by alleging that the decline in stock price was caused by the "materialization of the risk concealed by the fraudulent statement." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007) (citation omitted).

Whether through a corrective disclosure or materialization of the risk, allegations of loss causation must be supported by specific facts because "[c]onclusory allegations are insufficient to plead loss causation." *Solow v. Citigroup, Inc.*, No. 10 Civ. 2927 (RWS), 2012 U.S. Dist. LEXIS 70022, at \*19 (S.D.N.Y. May 18, 2012).  Here, however, the AC alleges loss causation only in conclusory fashion, offering a single sentence alleging that "material risks and adverse information previously concealed by Defendants' false and misleading statements and omissions materialized

---

[16] *See also Helo v. Sema4 Holdings Corp.*, No. 3:22-CV-01131 (VDO), 2024 U.S. Dist. LEXIS 135873, at \*29 (D. Conn. July 31, 2024) (statement that "2021 was a transformative year" is puffery); *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763 (JMF), 2018 U.S. Dist. LEXIS 8114, at \*30 (S.D.N.Y. Jan. 18, 2018) (statement that company was "on track" is puffery); *Rudman v. CHC Group LTD.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (statement that customer relationship is "strong" is puffery);  *In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 179-80 (D.D.C. 2007) (statements about "smart" and "sound" business model are puffery).

when Checkpoint revealed that the FDA had issued a complete response letter for the cosibelimab BLA, rejecting the application." (AC ¶ 150.)  This conclusory allegation is not enough to plead loss causation.  *Solow*, 2012 U.S. Dist. LEXIS 70022, at *19.[17]

Moreover, as a matter of law, Checkpoint's announcement of the CRL was neither a "corrective disclosure" nor the "materialization of a concealed risk."

This is an omissions case, so a "corrective disclosure" must "disclose[] that allegedly material information had been omitted."  *Boluka Garment Co. v. Canaan Inc.*, 547 F. Supp. 3d 439, 445 (S.D.N.Y. 2021).  Checkpoint's announcement of the CRL, however, did not disclose any of the information that Defendants allegedly "failed to disclose."  Thus, it is not a corrective disclosure.  *See Stratte-McClure v. Morgan Stanley*, 598 F. App'x 25, 29 (2d Cir. 2015) (holding that "[t]o allege a corrective disclosure, a plaintiff must allege that the disclosure revealed to the market the falsity of the prior statement").

Checkpoint's announcement of the CRL also was not the "materialization of the risk concealed by" Defendants' alleged misstatements.  *Honig*, 2021 U.S. Dist. LEXIS 193097, at *22. On the contrary, Checkpoint expressly warned investors that the FDA might not approve the cosibelimab BLA, including after the FDA issued a Form 483 to Samsung Biologics after the pre-approval inspection for the cosibelimab BLA.  (*See, e.g.*, Jaffe Decl., Ex. 12 at 47.)  Thus, the CRL was the materialization of a risk Checkpoint *disclosed*, rather than the materialization of a risk concealed by Defendants' alleged misstatements, and it does not, therefore, support a claim of loss

---

[17] *See also Honig v. Hansen,* Nos. 20 Civ. 5872, 20 Civ. 8618 (AKH), 2021 U.S. Dist. LEXIS 193097, at *22-23 (S.D.N.Y. Oct. 8, 2021) (emphasis added), *vacated on other grounds*, 2021 WL 5518207 (S.D.N.Y. Nov. 24, 2021) ("Allegations of 'materialization of the risk' must be supported with specific factual allegations . . . ."); *In re New Energy Sys. Sec. Litig.*, 66 F. Supp. 3d 401, 406 (S.D.N.Y. 2014) ("As drafted, the Complaint simply yokes the late 2011 drop in New Energy's stock price to allegations of earlier malfeasance.  But loss causation cannot be alleged plausibly in so conclusory a fashion.").

causation either. *See, e.g.*, *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 U.S. Dist. LEXIS 48462, at *39-40 (S.D.N.Y. Mar. 22, 2023) ("Plaintiffs' materialization of an undisclosed risk argument also fails. The promulgation of new regulations was not the materialization of an undisclosed risk, because Alibaba had repeatedly warned investors of such a possibility.").[18]

*    *    *

For each of these reasons, the AC fails to plausibly allege any of the essential scienter, falsity or loss causation elements of a Section 10(b) claim.

## II.    The Section 20(a) Claim Must Be Dismissed Because the AC Fails to Allege a Section 10(b) Claim.

As the AC fails to allege a Section 10(b) claim, the Section 20(a) claim against the Individual Defendant must be dismissed. *See, e.g.*, *Aratana*, 315 F. Supp. 3d at 766.

## III.    The Expert Declaration Attached to the AC Should Be Struck Because It Is Not a "Written Instrument" under Federal Rule of Civil Procedure 10(c).

Plaintiffs attached to the AC a purported expert "declaration" from Jennifer Ahearn (the "Ahearn Declaration"). (*See* AC, Ex. 3.) The Ahearn Declaration purports to opine on "industry standard practices relating to the relationship between sponsors of FDA Biologics License Applications (BLAs) and their contract manufacturing organizations (CMOs), and the extent of communication and cooperation between sponsors and their CMOs with respect to FDA pre-approval inspections." (*Id.* ¶ 3.) The Ahearn Declaration is ultimately irrelevant to Defendants' motion to dismiss because the AC does not rely on it to support its falsity, scienter,

---

[18] *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 1:17-cv-1235-GHW, 2018 U.S. Dist. LEXIS 54594, at *53-54 (S.D.N.Y. Mar. 30, 2018) (holding loss causation was not adequately pled where defendants explicitly warned investors of the company's risk of insolvency, precluding claim that the risk was concealed); *Monroe County Employees' Retirement System v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014) ("The drop in YPF's share price after the announcement of nationalization likely represented the materialization of a known risk, rather than the disclosure of a concealed one. Therefore, plaintiffs' Section 10(b) claim is dismissed for failing to plausibly allege loss causation.").

or loss causation allegations. Regardless, since it is well-established in this Court that expert declarations may not be attached to complaints, the Court should strike the Ahearn Declaration and disregard ¶¶ 53-57 of the AC, which are based on the Ahearn Declaration. *See, e.g.*, *Alix v. McKinsey & Co.*, No. 18-cv-4141 (JMF), 2023 U.S. Dist. LEXIS 145872, at *82-83 (S.D.N.Y. Aug. 18, 2023) (granting motion to strike expert declaration attached to complaint); *Singh v. Deloitte LLP*, No. 21-cv-8458 (JGK), 2023 U.S. Dist. LEXIS 115252, at *14-15 (S.D.N.Y. July 5, 2023) (same); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018).

## CONCLUSION

For the reasons explained herein, the AC should be dismissed with prejudice,[19] and the Court should strike the Ahearn Declaration.

Respectfully submitted this 23rd day of October, 2024.

**ALSTON & BIRD**

/s/ *Brett D. Jaffe*
Brett D. Jaffe
brett.jaffe@alston.com
Timothy J. Fitzmaurice
tim.fitzmaurice@alston.com
90 Park Avenue, 15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Defendants*

---

[19] *In re Canopy Growth Sec. Litig.*, 23 Civ. 4302 (PAE), 2024 U.S. Dist. LEXIS 127320, at *46 n.6 (S.D.N.Y. July 17, 2024) (granting motion to dismiss with prejudice because "lead plaintiff has already amended his complaint once and was given another opportunity to amend his complaint after defendants filed their motion to dismiss, while being admonished that 'no further opportunities to amend will ordinarily be granted.'"); *see also* DCKT #33 (providing plaintiff with "21 days after the service of a motion under Rule 12(b) to amend the complaint once as a matter of course," and stating "[n]o further opportunities to amend will ordinarily be granted").

23

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 23rd day of October, 2024, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system, which will automatically send an

email notification of such filing to all attorneys of record in the above-referenced case.

**ALSTON & BIRD**

/s/ *Brett D. Jaffe*
Brett D. Jaffe
brett.jaffe@alston.com
90 Park Avenue
15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel for Defendants*