**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE CHECKPOINT THERAPEUTICS, INC. SECURITIES LITIGATION** | **Case No. 1:24-cv-02613-PAE** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.      The AC Fails to Plead a Section 10(b) Claim. ................................................................ 2

        A.      The AC Does Not Plausibly Allege a Strong Inference of Scienter. ..................... 2

                1.      Plaintiffs' Arguments Regarding Inspections of Samsung Biologics
                        for Drugs Checkpoint Did Not Develop Do Not Plausibly Allege
                        Scienter. ...................................................................................................... 2

                2.      Plaintiffs' Arguments Regarding the FDA's Inspection of Samsung
                        Biologics for the Cosibelimab BLA Do Not Plausibly Allege
                        Scienter. ...................................................................................................... 3

                3.      Plaintiffs' Arguments About Checkpoint's Disclosure of the
                        Form 483 Issued After the FDA's Inspection of Samsung Biologics
                        for the Cosibelimab BLA Do Not Plausibly Allege Scienter. ................... 5

                4.      Plaintiffs Ask This Court to Apply the Wrong Test for Pleading
                        Scienter in Cases Concerning FDA Drug Approvals. ............................... 5

                5.      Plaintiffs' Motive Arguments Do Not Plausibly Allege Scienter.............. 7

        B.      The AC Fails to Plausibly Allege Falsity. ........................................................... 7

                1.      Plaintiffs Abandon Most of the AC's Falsity Claims. ............................... 7

                2.      The AC Fails to Allege Contemporaneous Falsity. ................................... 7

                3.      The AC Fails to Establish Defendants Had a Duty to Disclose
                        Information About the FDA's Inspection of Samsung Biologics.............. 8

                4.      Plaintiffs Do Not Dispute Defendants' Puffery Arguments. ..................... 8

        C.      The AC Fails to Plausibly Allege Loss Causation Based on the
                Materialization of the Risk Theory. ..................................................................... 9

II.     The Section 20(a) Claim Must Be Dismissed Because the AC Fails to Allege a
        Section 10(b) Claim. ................................................................................................... 10

III.    The Court Should Strike the Ahearn Declaration. ......................................................... 10

CONCLUSION........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Omaha Police v. Cognyte Software Ltd.*,
No. 23 Civ. 1769 (LGS), 2024 U.S. Dist. LEXIS 177258 (S.D.N.Y. Sept. 30, 2024)............10

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)..................................................................................................4

*Gorlamari v. Verrica Pharms., Inc.*,
No. 22-cv-2226, 2024 U.S. Dist. LEXIS 6502 (E.D. Pa. Jan. 11, 2024)..................................4

*Gregory v. Pronai Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018)......................................................................................5

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)......................................................................................2

*In re DNTW Chartered Acct. Sec. Litig.*,
666 F. App'x 78 (2d Cir. 2016) ...............................................................................................3

*In re Intercept Pharms., Inc. Sec. Litig.*,
No. 14 Civ. 1123 (NRB), 2015 U.S. Dist. LEXIS 26442 (S.D.N.Y. Mar. 4, 2015)..............4, 6

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................................8

*In re Platinum & Palladium Antitrust Litig.*,
No. 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624 (S.D.N.Y. Mar. 28, 2017)..............10

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001).....................................................................................................7

*Lau v. Opera Ltd.*,
527 F. Supp. 3d 537 (S.D.N.Y. 2021).......................................................................................5

*Liu v. Intercept Pharms., Inc.*,
No. 20-3488, 2022 U.S. App. LEXIS 16659 (2d Cir. June 16, 2022).......................................5

*Monroe Cnty. Emps. Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014)......................................................................................10

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
898 F. Supp. 2d 673 (S.D.N.Y. 2012).....................................................................................10

*Salzman v. ImmunityBio, Inc.*,
 No. 23-cv-01216-GPC-VET, 2024 U.S. Dist. LEXIS 109213 (S.D. Cal. June 20,
 2024) ..........................................................................................................................4

*Schaeffer v. Nabriva Therapeutics PLC*,
 No. 19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035 (S.D.N.Y. Apr. 28, 2020)..............6, 8

*SEC v. CKB168 Holdings, Ltd.*,
 210 F. Supp. 3d 421 (E.D.N.Y. 2016) ....................................................................3

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
 348 F. Supp. 3d 313 (S.D.N.Y. 2018)......................................................................4

*Singh v. Deloitte LLP*,
 No. 21-cv-8458 (JGK), 2023 U.S. Dist. LEXIS 115252 (S.D.N.Y. July 5, 2023)..................10

*Sinnathurai v. Novavax, Inc.*,
 645 F. Supp. 3d 495 (D. Md. 2022) ........................................................................4

*Skiadas v. Acer Therapeutics Inc.*,
 No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 129104 (S.D.N.Y. July 21, 2020)...............7

*Smith v. PureCycle Techs., Inc.*,
 No. 23-cv-8605 (JGK), 2024 U.S. Dist. LEXIS 232013 (S.D.N.Y. Dec. 20, 2024) .................9

*Todd v. STAAR Surgical Co.*,
 No. CV-14-05263-MWF-RZ, 2016 U.S. Dist. LEXIS 186511 (C.D. Cal. Apr. 12,
 2016) ..........................................................................................................................4

*Yanek v. Staar Surgical Co.*,
 388 F. Supp. 2d 1110 (C.D. Cal. 2005) ...................................................................6

**STATUTES**

Prescription Drug User Fee Act.........................................................................................8

Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b)............................................2, 10

Section 20(a) of the Securities Exchange Act, 15 U.S.C. §78t(a) .................................................10

### CITATION CONVENTIONS

"AC":  Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws, filed August 23, 2024 (DCKT #36)

"BLA":  FDA Biologics License Application, which is a request for permission to introduce, or deliver for introduction, a biologic product into interstate commerce, 21 C.F.R. § 601.2

"Checkpoint":  Defendant Checkpoint Therapeutics, Inc.

"CRL":  FDA Complete Response Letter, which is sent by the FDA if the agency determines that it will not approve, among other things, a BLA in its present form, 21 C.F.R. § 314.110(a)

"Defendants":  Defendants Checkpoint Therapeutics, Inc. and James Oliviero

"EIR":  FDA Establishment Inspection Report

"Exchange Act":  The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq*.

"FDA":  United States Food and Drug Administration

"MTD":  Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss and Motion to Strike, filed October 23, 2024 (DCKT #38)

"Oliviero":  Defendant James Oliviero, Checkpoint's Chief Executive Officer and a member of Checkpoint's Board of Directors

"Opposition" or "Opp.":  Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint, filed December 23, 2024 (DCKT #41)

"Plaintiffs":  Lead Plaintiff Hamilton Bailey and named Plaintiff Reiko Juhst

"PSLRA":  Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4, *et seq*.

"Samsung Biologics":  Samsung Biologics Co., Ltd., which is the third-party company that Checkpoint hired to manufacture cosibelimab

"SEC":  United States Securities and Exchange Commission

"Section 10(b)":  Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)

"Section 20(a)":  Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)

### PRELIMINARY STATEMENT

As set forth in the MTD, the Amended Complaint does not come close to pleading scienter, falsity, or loss causation—all three of which are essential to the survival of Plaintiffs' claims. The Opposition makes no meaningful effort to defend a majority of the AC's pleading deficiencies; as to the remainder, the Opposition either misstates the law, reaches unreasonable and conclusory inferences as to the facts, or both. The AC should be dismissed in its entirety, with prejudice.

The AC alleges Defendants failed to disclose information about eleven FDA inspections of Samsung Biologics, the third-party manufacturer for cosibelimab, Checkpoint's FDA-approved immunotherapy treatment for skin cancer.[1] The Opposition concedes the AC lacks concrete allegations that Defendants had contemporaneous knowledge of the information they allegedly "failed to disclose" about *any* of the inspections of Samsung Biologics. It is also undisputed that ten of the inspections did not involve Checkpoint at all; instead, they concerned unnamed drugs Samsung Biologics manufactured for its other clients. The Opposition's only defense for three of the alleged misstatements based on these ten inspections involving other drugs is a factually baseless and conclusory argument that it was "reckless" for Defendants to lack knowledge of FDA inspections for drugs Defendants did not develop. For the remaining alleged misstatements, the Opposition asks the Court to infer, based on "circumstantial evidence," that Defendants had contemporaneous knowledge of the information they "failed to disclose." None of that "circumstantial evidence," however, is enough to plead scienter or falsity.

Finally, the AC fails to plead loss causation under the materialization of the risk theory because Checkpoint did not conceal and, in fact, expressly warned investors of the "risk" that "materialized": the FDA's initial rejection of the cosibelimab BLA because of a Form 483.

---

[1] The FDA approved the cosibelimab BLA in December 2024, shortly before the Opposition was filed. (Checkpoint Therapeutics, Inc., Current Report (Form 8-K) (Dec. 16, 2024).)

<u>**ARGUMENT**</u>

**I.      The AC Fails to Plead a Section 10(b) Claim.**

**A.      The AC Does Not Plausibly Allege a Strong Inference of Scienter.**

The AC's core allegation is that Defendants "failed to disclose" information about eleven FDA inspections of Samsung Biologics. (AC ¶¶ 104-149.) As Defendants have demonstrated, the AC fails to plead a strong inference of scienter because it "lacks non-conclusory allegations to support the inference that defendants knowingly withheld or misrepresented information in their possession" about those inspections. *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018); (MTD at 9-17). The Opposition's arguments in response do not establish otherwise, for the reasons explained below.

> **1.      *Plaintiffs' Arguments Regarding Inspections of Samsung Biologics for Drugs Checkpoint Did Not Develop Do Not Plausibly Allege Scienter.***

Ten of the inspections concerned unnamed drugs that Checkpoint did not develop. The AC alleges Defendants "failed to disclose" that Form 483s were issued to Samsung Biologics after these inspections, as well as the fact that certain issues identified in the Form 483s caused Samsung Biologics to notify unnamed clients about an "MSAT laboratory deficiency" and later "led to an internal investigation at Samsung Biologics and its firing of multiple executives." (MTD at 9-10.)

The Opposition, however, does not dispute that the AC fails to allege Defendants had *any* knowledge of the inspections or Form 483s issued to Samsung Biologics after the inspections. Likewise, the Opposition does not dispute that the AC fails to allege Checkpoint was one of the "clients" notified about the "MSAT laboratory deficiency" or that Defendants had knowledge of the "internal investigation at Samsung Biologics and its firing of multiple executives." (*Id.*)

Instead, the Opposition argues that Defendants were "consciously reckless in not knowing about" these inspections. (Opp. at 19-20.) The Opposition, however, does not cite any case

2

holding it is "reckless" for a defendant to lack knowledge of FDA inspections of third-party manufacturers for drugs it is not developing.[2]  Moreover, the AC's allegations are not nearly enough to plead recklessness, which requires "conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *In re DNTW Chartered Acct. Sec. Litig.*, 666 F. App'x 78, 80 (2d Cir. 2016).

The Opposition further argues it is "reasonable to infer" Checkpoint was one of the "clients" that Samsung Biologics notified about the "MSAT laboratory deficiency" based on certain language in Checkpoint's contract with Samsung Biologics.  (Opp. at 19.)  That contract, however, did not require Samsung Biologics to notify Checkpoint about those issues.[3]  Moreover, the Opposition fails to cite any case holding that it can rely on a contractual clause as a substitute for well-pled facts that Checkpoint was notified of the "MSAT laboratory deficiency."

> 2.      *Plaintiffs' Arguments Regarding the FDA's Inspection of Samsung Biologics for the Cosibelimab BLA Do Not Plausibly Allege Scienter.*

As for the one FDA inspection of Samsung Biologics that concerned the cosibelimab BLA, the AC alleges that when Oliviero responded to analyst questions in September 2023, he "failed to disclose" that the FDA issued a Form 483 to Samsung Biologics after this inspection. (AC ¶¶ 138, 142.)  The Opposition does not dispute, however, that the AC lacks any concrete allegations demonstrating Oliviero knew about the Form 483 prior to those alleged misstatements.

---

[2] The Opposition cites an SEC enforcement action against a multi-level marketing company selling educational software.  (Opp. at 20 (citing *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421 (E.D.N.Y. 2016)).)

[3] The Opposition cites a provision of the contract that requires notification for "change[s] to the Manufacturing Process, the Services, or the Specifications," which are defined as "the mutually agreed production process and analytical methods for the Manufacturing of the Product," "manufacturing services for Client," and "observable and measurable characteristics of the Products, Client Materials, or Raw Materials . . . and the criteria for their storage, handling, packaging and shipping."  (DCKT #36-2 at §§ 1.44, 1.71, 2.1; Opp. at 19.)

The Opposition asks the Court to cure this fatal pleading deficiency by inferring Oliviero's knowledge of the Form 483 based on "circumstantial evidence." (Opp. at 13-18.)

The Opposition first relies on "industry standard practice," Oliviero's public statements, and Oliviero's involvement with the cosibelimab BLA as "circumstantial evidence" of scienter. (*Id.* at 13-14, 15-16.) Defendants have demonstrated that this "circumstantial evidence" does not support a strong inference of scienter (MTD at 10 n.7, 15-16), and the Opposition does not establish otherwise.[4] The Opposition next points to Checkpoint's contract with Samsung Biologics as "circumstantial evidence" of scienter, but the Opposition does not cite any case where a contract served as a substitute for well-pled facts demonstrating defendant's knowledge of purportedly omitted information. (Opp. at 14-15.)[5] Finally, the Opposition relies on the "core operations"

---

[4] The Opposition does not cite any case supporting its "industry standard practice" arguments. (Opp. at 15-16.) For Oliviero's involvement with the cosibelimab BLA, the Opposition relies on a pre-PSLRA case that allowed scienter to be averred "generally," *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985), and two other cases (Opp. at 13-14), neither of which inferred knowledge regarding inspections of a third-party contract manufacturer based on the defendants' involvement with a drug application. *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018); *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2016 U.S. Dist. LEXIS 186511, at *38-41 (C.D. Cal. Apr. 12, 2016). Finally, with respect to Oliviero's public statements (Opp. at 17), neither case cited by the Opposition held that the defendants' word choice was sufficient to plead scienter; rather, both cases involved well-pled facts regarding the defendants' knowledge of undisclosed facts. *Gorlamari v. Verrica Pharms., Inc.*, No. 22-cv-2226, 2024 U.S. Dist. LEXIS 6502, at *5, *24-25 (E.D. Pa. Jan. 11, 2024) (holding the complaint pled scienter based on, *inter alia*, statements by a former employee regarding the defendants' receipt of the undisclosed Form 483); *In re Intercept Pharms., Inc. Sec. Litig.*, No. 14 Civ. 1123 (NRB), 2015 U.S. Dist. LEXIS 26442, at *20-23, *29 (S.D.N.Y. Mar. 4, 2015) (holding the complaint pled scienter based on, *inter alia*, internal "emails" regarding the undisclosed trial study results).

[5] The Opposition's cases each involved allegations of defendants' actual knowledge. *See Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 524-26 (D. Md. 2022) (holding the complaint pled scienter based on, *inter alia*, statements "from multiple CWs which 'confirm and corroborate' that Novavax officials were made aware of the manufacturing problems at" certain facilities); *Salzman v. ImmunityBio, Inc.*, No. 23-cv-01216-GPC-VET, 2024 U.S. Dist. LEXIS 109213, at *24-26, *36-37 (S.D. Cal. June 20, 2024) (holding complaint pled scienter based on, *inter alia*, allegations that defendants were "intricately involved in attempts to remedy [past

theory (*id.* at 16-17), but that theory is "not independently sufficient to raise a strong inference of scienter." *Gregory v. Pronai Therapeutics Inc.*, 297 F. Supp. 3d 372, 415-16 (S.D.N.Y. 2018).

In all, the AC's "circumstantial evidence" does not support a strong inference of scienter.

> 3. *Plaintiffs' Arguments About Checkpoint's Disclosure of the Form 483 Issued After the FDA's Inspection of Samsung Biologics for the Cosibelimab BLA Do Not Plausibly Allege Scienter.*

The AC claims that even when Defendants disclosed the Form 483 in November 2023, Defendants acted with scienter because they "failed to disclose":  (i) information from the FDA's EIR and (ii) that "the FDA had already rejected Eli Lilly's lebrikizumab BLA" allegedly "due to the same issues noted in the Form 483."  (AC ¶¶ 143-149.)  The AC, however, does not allege Defendants ever received the FDA's EIR.  (MTD at 10.)  The Opposition does not argue otherwise, except to offer the rank speculation that the FDA could have shared information from the EIR with Checkpoint (Opp. at 18-19), but "speculative allegations fail to adequately allege scienter." *Liu v. Intercept Pharms., Inc.*, No. 20-3488, 2022 U.S. App. LEXIS 16659, at *8-9 (2d Cir. June 16, 2022).  Moreover, the FDA's rejection of Eli Lilly's BLA was publicly known when Defendants disclosed the Form 483, and the Opposition does not dispute that Defendants' alleged failure to disclose information that was already public does not support a strong inference of scienter. *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 557-58 (S.D.N.Y. 2021); (MTD at 11-12).

> 4. *Plaintiffs Ask This Court to Apply the Wrong Test for Pleading Scienter in Cases Concerning FDA Drug Approvals.*

Even if the AC plausibly alleged Defendants had contemporaneous knowledge of the information they allegedly "failed to disclose" (and, for the reasons explained above, it does not), this Court has held that "[i]n cases regarding public statements about FDA approval, a complaint

---

cGMP] failures" by the third-party contract manufacturer, received frequent updates from the third-party's leadership about those issues and attended the final pre-approval inspection).

will adequately plead scienter if it alleges the '***management knows*** that certain facts will ***necessarily prevent the regulatory approval or the marketing of the drug*** and conceals these facts from the investing public.'"  *Schaeffer v. Nabriva Therapeutics PLC*, No. 19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035, at \*36 (S.D.N.Y. Apr. 28, 2020) (emphasis added).  Here, the Opposition concedes "Plaintiffs do not claim that Defendants knew the cosibelimab BLA was doomed to failure" or "that Defendants knew the BLA would be rejected."  (Opp. at 21-22.)

Unable to satisfy the test set forth by this Court's holding in *Schaeffer*, the Opposition instead argues that *Schaeffer* is "contrary to law."  (Opp. at 22.)  The Opposition claims that the AC only must allege that "undisclosed adverse facts[] '*could* cause problems for the drug's approval and commercial success.'"  (Opp. at 22.)  Neither of the cases cited by the Opposition, however, applied that test.[6]  In both cases, the court concluded scienter was adequately alleged because—consistent with this Court's holding in *Schaeffer*—***defendants "had actual knowledge*** that the[] problems" identified in a Form 483 "could delay or jeopardize the [drug's] approval."  *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1130 (C.D. Cal. 2005) (emphasis added); *see also Intercept*, 2015 U.S. Dist. LEXIS 26442, at \*16 (finding scienter was plausibly alleged because the individual defendant's "emails make clear that" he believed data from a clinical study was a "meaningful concern that could cause problems for the drug's approval and commercial success").[7]  There are no similar "actual knowledge" allegations in the AC.

---

[6] Moreover, as there are almost innumerable facts that "could" impact a drug approval application (Opp. at 22), it would be unworkable for the omission of such a wide range of information to be sufficient to plead scienter without alleging Defendants' "actual knowledge" of those facts.

[7] This Court's decision in *Intercept* applied essentially the same test as *Schaeffer*.  *See Intercept*, 2015 U.S. Dist. LEXIS 26442, at \*18 ("[I]f the management ***knows*** that certain facts will necessarily prevent the regulatory approval or the marketing of the drug and conceals these facts from the investing public, then there is scienter.") (emphasis added).

5.      *Plaintiffs' Motive Arguments Do Not Plausibly Allege Scienter.*

Finally, the Opposition claims Defendants had "strong financial motives" to commit securities fraud based on Oliviero's stock transactions and Checkpoint's need to fundraise during the Class Period.  (Opp. at 20-22.)  While the Opposition repeats the AC's allegations about Oliviero's stock transactions, it does not dispute, as Defendants demonstrated in the MTD, that those allegations do not support a strong inference of scienter.  (MTD at 16-17.)  In addition, Checkpoint's alleged need for fundraising "is not necessarily sufficient to support an inference of scienter," and, here, Plaintiffs have not identified other facts plausibly alleging scienter.  *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 129104, at *19 (S.D.N.Y. July 21, 2020).  Further, the Opposition's argument about Checkpoint's alleged need for fundraising is "too generalized to demonstrate scienter" because it would apply to virtually every early-stage company.  *Kalnit v. Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001).

**B.      The AC Fails to Plausibly Allege Falsity.**

1.      *Plaintiffs Abandon Most of the AC's Falsity Claims.*

The Opposition makes no attempt to defend the AC's allegation that the statements identified in ¶¶ 106-107 (March 9, 2021), ¶ 117 (January 25, 2022), ¶¶ 122-123 (August 12, 2022), ¶ 127 (January 18, 2023), and ¶¶ 130-132 (March 30, 2023) were false or misleading.  Accordingly, the claims regarding those alleged misstatements should be dismissed.

2.      *The AC Fails to Allege Contemporaneous Falsity.*

The Opposition tries to defend the viability of the AC's falsity allegations for:  (i) the "risk factor disclosures" in Checkpoint's Form 10-Ks dated March 12, 2021, March 28, 2022, and March 31, 2023; (ii) Oliviero's responses to analyst questions at industry conferences on September 11 and 28, 2023; and (iii) Checkpoint's statement on November 13, 2023 disclosing the Form 483 issued to Samsung Biologics after the FDA inspection for the cosibelimab BLA.

7

(Opp. at 5-11.)  With respect to those alleged misstatements, the AC must, however, plead facts demonstrating that each alleged misstatement "was false at the time it was made." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014); (MTD at 17-18).  Here, the AC fails to plead that Defendants had contemporaneous knowledge of the information about the FDA's inspections of Samsung Biologics that they allegedly "failed to disclose" in those statements (MTD at 17-19), and the Opposition's arguments fail to establish otherwise, for the reasons explained above.

> 3.     *The AC Fails to Establish Defendants Had a Duty to Disclose Information About the FDA's Inspection of Samsung Biologics.*

Given the AC's failure to plead contemporaneous falsity, the Court need not even reach this issue, but the AC further fails to establish that Defendants had a duty to disclose the allegedly omitted information about the FDA's inspections of Samsung Biologics.

No court has held that there is a duty to disclose information about FDA inspections for drugs Defendants are not developing.  (MTD at 18.)  The Opposition does not argue otherwise.

As to the Form 483 issued after the FDA's inspection of Samsung Biologics for the cosibelimab BLA, the Opposition argues Defendants had a duty to disclose the Form 483 because it "contained six observations" and "noted pervasive data integrity problems."  (Opp. at 11-12.) Here, however, "the PDUFA date for" cosibelimab was "still over four months away" when the Form 483 was issued, so "Plaintiff[s] need[] to plead something that suggests why these violations could not be remedied within that timeframe, rather than conclusorily stating it was so." *Schaeffer*, 2020 U.S. Dist. LEXIS 78035, at *32; (MTD at 18-19).  There are no such allegations in the AC.

> 4.     *Plaintiffs Do Not Dispute Defendants' Puffery Arguments.*

Finally, Defendants demonstrated in the MTD that nearly half of the alleged misstatements are inactionable puffery.  (MTD at 19-20.)  In response, the Opposition argues that puffery is "fact- and context-dependent" but it fails to identify "facts" or "context" that would make these alleged

misstatements non-puffery. (Opp. at 12.) The Opposition only specifically discusses one of the puffery statements (the alleged misstatement in ¶ 137), and it does not dispute that the statement "doing very well towards approval" is puffery, as Defendants argued in the MTD. (*Id.*)

### C.    The AC Fails to Plausibly Allege Loss Causation Based on the Materialization of the Risk Theory.

The Opposition does not dispute that Checkpoint's announcement of the CRL is not a "corrective disclosure" for purposes of pleading loss causation. (*See* MTD at 21.) Instead, the Opposition relies on the "materialization of a concealed risk" theory to support the AC's loss causation allegations.

As Defendants demonstrated in the MTD, however, Checkpoint did not "conceal" the "risk" that allegedly "materialized" on December 18, 2023—*i.e.*, Defendants did not conceal that the Form 483 issued to Samsung Biologics after the FDA's inspection for the cosibelimab BLA could cause the FDA to deny the cosibelimab BLA or delay its approval. (*See* MTD at 5, 21-22.) The Opposition does not—because it cannot—argue otherwise.

Instead, the Opposition asserts that Defendants' arguments fail to raise a "truth-on-the-market" defense because Checkpoint's warning that the FDA might not approve the cosibelimab BLA "did nothing to reveal the ***concealed facts*** that made the FDA's rejection of the BLA substantially more likely." (Opp. at 24, 24 n.8 (emphasis added).) The Opposition, however, is fighting a strawman. Defendants are not asserting—nor are Defendants required to assert—a "truth-on-the-market" defense to establish that the AC's allegations fail to plausibly allege loss causation under the "materialization of the risk" theory.

Accordingly, the AC does not plausibly allege loss causation. (*See* MTD at 20, 22 n.18).[8]

---

[8] *Accord Smith v. PureCycle Techs., Inc.*, No. 23-cv-8605 (JGK), 2024 U.S. Dist. LEXIS 232013, at *42 (S.D.N.Y. Dec. 20, 2024) (rejecting loss causation allegations based on "the timely

II.   **The Section 20(a) Claim Must Be Dismissed Because the AC Fails to Allege a Section 10(b) Claim.**

As the AC fails to allege a Section 10(b) claim, the Section 20(a) claim also should be dismissed.  (MTD at 22.)  The Opposition does not argue otherwise.  (Opp. at 24-25.)

III.   **The Court Should Strike the Ahearn Declaration.**

The Opposition does not dispute that Defendants' motion to strike the "declaration" of Jennifer Ahearn (the "Ahearn Declaration") should be granted.  (*See* Opp. at 25.)

Nevertheless, the Opposition asks this Court to accept as true ¶¶ 53-57 of the AC, which "summarize[]" Ms. Ahearn's opinions.  (*Id.*)  At the motion to dismiss stage, however, this Court has held that it "does not rely on" or accept as true "expert opinions" masquerading as factual allegations.  *See In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624, at \*44 n.9 (S.D.N.Y. Mar. 28, 2017).  Accordingly, the Court should not only strike the Ahearn Declaration but also disregard ¶¶ 53-57 of the AC.  *See, e.g.*, *Singh v. Deloitte LLP*, No. 21-cv-8458 (JGK), 2023 U.S. Dist. LEXIS 115252, at \*15 (S.D.N.Y. July 5, 2023).

## CONCLUSION

The AC should be dismissed with prejudice (MTD at 23 n.19), and the Court should grant Defendants' Motion to Strike.

---

disclosure of materialized risks . . . that [defendant] had previously warned investors about"); *City of Omaha Police v. Cognyte Software Ltd.*, No. 23 Civ. 1769 (LGS), 2024 U.S. Dist. LEXIS 177258, at \*27 (S.D.N.Y. Sept. 30, 2024) (rejecting loss causation allegations because "[a]ll of the alleged disclosures were materializations of business and reputational risks that Defendants expressly disclosed" and "Plaintiff cannot now point to the materialization of those known risks to show loss causation"); *Monroe Cnty. Emps. Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014) (rejecting loss causation allegations based on "the materialization of a known risk, rather than the disclosure of a concealed one"); *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 685-86 (S.D.N.Y. 2012) (rejecting loss causation allegations because "defendants repeatedly warned of risks" that materialized).

Respectfully submitted this 3rd day of February, 2025.

**ALSTON & BIRD**

/s/ *Brett D. Jaffe*
Brett D. Jaffe
brett.jaffe@alston.com
Timothy J. Fitzmaurice
tim.fitzmaurice@alston.com
90 Park Avenue, 15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Defendants*

11

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Reply Memorandum of Law in Support of Defendants' Motion to Dismiss and Motion to Strike complies with the word-count limitations in Local Civil Rule 7.1(c) because it contains 3,428 words, as counted by the Microsoft Word-processing program used to prepare this document.  This word count excludes the caption, table of contents, table of authorities, signature blocks, this Certificate of Compliance, and the Certificate of Service. Further, this document complies with the 10-page limitation for reply memoranda set forth in The Honorable Paul A. Engelmayer's Individual Rules and Practices in Civil Cases.

**ALSTON & BIRD**

/s/ *Brett D. Jaffe*
Brett D. Jaffe
brett.jaffe@alston.com
90 Park Avenue, 15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of February, 2025, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record in the above-referenced case.

**ALSTON & BIRD**

<u>/s/ *Brett D. Jaffe*          </u>
Brett D. Jaffe
brett.jaffe@alston.com
90 Park Avenue
15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel for Defendants*